Dorothy Jean LEWIS,
Appellant/Cross–Appellee,

v.

Stephen T. LEWIS,
Appellee/Cross–Appellant.

Nos. S–2745, S–2777.

Supreme Court of Alaska.

Jan. 19, 1990.

Patrick M. Rodey, Aglietti, Pennington, Rodey & Offret, Anchorage, for appellant/cross-appellee.

Joseph W. Sheehan, Fairbanks, for appellee/cross-appellant.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Chief Justice.

## I. INTRODUCTION

This appeal and cross-appeal arise from the distribution of property in a divorce proceeding. The principal issues on appeal concern 600,000 shares of stock in a closely held corporation and the determination by the trial court as to which shares are premarital property. Other issues concern the relationship between interim support payments and the allocation of marital property, the trial court's decision to exclude an expert witness, and a determination as to whether a spouse's employment contract constitutes marital property. We affirm in part, reverse in part and remand for further proceedings.

## II. FACTS AND PROCEEDINGS BELOW

Stephen T. Lewis and Dorothy Jean Lewis (hereinafter "Jeanne") began living together in July of 1983. They were married on January 28, 1984. This was a thirty-two month marriage involving a thirty-eight year old woman and a forty-three year old man, each in good health. There were no children. Both individuals were employed prior to the marriage and both were employed at the time of the trial.

Steve had worked for MAPCO Refining Co. (MAPCO) and its predecessor Earth Resources since 1978. He and several other investors formulated plans to form a separate refining company during the spring and summer of 1984. Steve left MAPCO and joined the newly formed Petro Star Refining Co. (Petro) in October, 1984. Steve's salary for the last year he worked for MAPCO was $65,000.

Steve purchased 100,000 shares of Petro stock for $10,000 shortly after he joined Petro. The purchase was made with funds from his MAPCO profit sharing account. He received an additional 500,000 shares for successfully developing the refinery. Steve added Jeanne's name to these 600,000 shares to make Jeanne and he joint tenants with rights of survivorship.

In addition to Petro stock, Steve received substantial annual income from Petro: approximately $103,000 in 1985, approximately $112,000 in 1986, and approximately $112,000 in 1987. During the marriage, Jeanne worked at the University of Alaska for approximately $30,000 per annum. In the fall of 1985, she quit work to attend school full time. During the marriage, Steve contributed $335,675 and Jeanne contributed $55,216.24 to the marriage. Most of this was consumed during the course of the marriage, leaving virtually no savings apart from the Petro stock.

Steve filed for divorce in October 1986. On the day of separation Jeanne took what she wanted from the house and left with no employment. The superior court awarded temporary maintenance of $1,000 per month. Payment by Steve was irregular and a contempt motion was necessary for compliance.

After prolonged, unsuccessful negotiation between the parties, trial was set for January 18, 1988. Because of a late witness list, Jeanne's expert witness was not allowed to testify as to the value of Petro's stock which comprised the bulk of the parties' marital estate. At trial, Judge Blair ruled that:

1. the first 100,000 shares were purchased with Steve's separate premarital property;

2. the remaining 500,000 shares were given to Steven by Petro based on his education and previous experience, but were marital property because they were received during the marriage;

3. the value of the 500,000 shares acquired during the marriage was $.28 per share, a total of $140,000;

4. Steve should receive all the Petro stock and Jeanne should receive half of its monetary equivalent ($70,000);

5. the earned but undelivered stock was not part of the marital estate; and

6. Steve's three-year employment agreement was not part of the marital estate.

A final decree was signed on March 23, 1988.

## III. APPEAL

### A. *Allocation of Marital Property*

#### 1. *Standard of Review*

The standard of review applied by this court to property division is to determine whether the trial court abused the broad discretion given it under AS 25.24.-160(a)(4).[1] *Moffitt v. Moffitt,* 749 P.2d 343, 346 (Alaska 1988).

Division of property is a three-step process:

Step one—determining what property is available for distribution—is reviewed under the abuse of discretion standard, although it may involve legal determinations to which this court applies its independent legal judgment. The second step—placing a value on the property—is a factual determination that will be upset only if there is clear error. Alaska R.Civ.P. 52(a). Step three—allocating the property equitably—is reviewed purely under the abuse of discretion standard and "will not be' disturbed unless it is clearly unjust."

1. Alaska Statute 25.24.160(a)(4), as amended in 1985, reads in pertinent part:

AS 25.24.160. Judgment. (a) In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide

. . . .

(4) for the division between the parties of their property, whether joint or separate, acquired only during coverture, in the manner as may be just, and without regard to which of the parties is in fault; however, the court, in making the division, may invade the property of either spouse acquired before marriage when the balancing of the equities between the parties requires it; and to accomplish this end the judgment may require that one or both of the parties assign, deliver, or

*Moffitt,* 749 P.2d at 346 (quoting *Wanberg v. Wanberg,* 664 P.2d 568, 570 (Alaska 1983)).

Additionally, this court must

"be informed by the trial court what it found to be the ultimate facts upon which it based its conclusion that the property should be divided as it has decreed." ... The trial court thus has a duty "by sufficiently detailed and explicit findings 'to give [this] court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision.'" ... In a non-jury case, reasonable compliance with the rule that the court "find facts specially and state separately its conclusions of law thereon" is mandatory.

*Lang v. Lang,* 741 P.2d 1193, 1195 (Alaska 1987) (quoting *Merrill v. Merrill,* 368 P.2d 546, 547–48 (Alaska 1962)).

#### 2. *Did the Superior Court Err in Deducting Interim Support Payments from Jeanne's Share of the Property Division?*

On December 10, 1986, Jeanne filed a motion asking for temporary orders under AS 25.24.140.[2] The superior court awarded $1,000 per month in temporary maintenance and ordered Steve to provide medical and dental insurance to Jeanne during the pendency of the action. These are the terms Steve had proposed to the court in his Partial Opposition to Defendant's Motion for Temporary Orders.[3] Ad-

convey any of their real or personal property to the other party.

2. Alaska Statute 25.24.140 reads in pertinent part:

AS 25.24.140. Orders during action. (a) During the pendency of the action, the court may provide by order

(1) that one spouse pay an amount of money as may be necessary to enable the other spouse to prosecute or defend the action;

. . . .

(3) for the freedom of one spouse from the control of the other spouse during the pendency of the action; ...

3. In his proposal to pay $1,000 per month in temporary maintenance, Steve did not request that his temporary maintenance payments be

ditionally, the court awarded Jeanne $1,000 in attorney's fees to prosecute the action.

After determining the amount and value of the stock to be considered marital property, the superior court awarded half of the value, $70,000, to Jeanne. From Jeanne's $70,000 allocation, the court then *subtracted* $13,000 in interim support paid by Steve. The trial court reasoned as follows:

> 24. In order to maintain parity in the division of marital property, the sum of Eight Thousand Five Hundred Eighty Seven Dollars ($8,587.00), which represents the difference between the value of personal property awarded to Dorothy Jean Lewis (Paragraph No. 16) in excess of that awarded to Stephen T. Lewis (Paragraph 17), and the Thirteen Thousand Dollars ($13,000.00) of interim support paid by Stephen T. Lewis to Dorothy Jean Lewis shall be subtracted from her Seventy Thousand Dollars ($70,000.00) stock value, leaving an outstanding balance owed by Stephen T. Lewis to Dorothy Jean Lewis of Forty–Eight Thousand Five Hundred Dollars ($48,500.00).

This calculation effectively merged Steve's interim support payments into the allocation and distribution of marital property. The trial court did not explain why it was merging the interim support payment into the distribution of marital property. Rather, the court merely announced this conclusion in the form of a subtraction exercise.

The role of temporary maintenance or interim support payments [4] in the allocation and distribution of marital property in Alaska is not clear.[5]

In *Bussell v. Bussell*, 623 P.2d 1221, 1223 (Alaska 1981), this court upheld the trial court's refusal to give the husband credit in the property division for the money he sent to the wife during the separation. We did this because of the great disparity in income between the wife and husband during the separation and in view of the fact that the payments were apparently made with income from the business which was marital property. In *Dixon v. Dixon*, 747 P.2d 1169, 1175 (Alaska 1987), the husband paid attorney's fees as part of the monthly interim support payment to the wife, yet the trial court listed them as a liability on the wife's side of the ledger of marital assets and liabilities. This meant the husband would pay them twice. We remanded this issue to the trial court for corrections. The remaining interim support payments were also clearly distinguished from marital property. *Id.*

In *Carlson v. Carlson*, 722 P.2d 222, 225 (Alaska 1986), we addressed interim support and property division as separate issues. We did not consider interim support to be interrelated with questions regarding alimony and property division and affirmed an award of rehabilitation alimony of $200 per month for two years in addition to a property settlement of $6,000 in cash and other liquid assets. *Id.* at 225. Finally, in *Laing v. Laing*, 741 P.2d 649 (Alaska 1987) we upheld an award of "a greater share of the marital assets" to the wife *as well as* an award of temporary alimony for a "limited duration and for a specific purpose." *Laing*, 741 P.2d at 654 (quoting *Bussell*, 623 P.2d at 1224).

In other jurisdictions the distinction between alimony and the distribution of mari-

---

credited toward Jeanne's share of the property division. He did not discuss this subject.

**4.** The terms "temporary maintenance" and "interim support" are used interchangeably in the record. While neither term is expressly equated with the term "temporary alimony" or "interim alimony," they appear to be the functional equivalents of these later terms and will be explicitly regarded as such in this opinion.

**5.** There is statutory language that seems to explicitly distinguish *permanent* maintenance from the allocation and distribution of marital

property. Alaska Statute 25.24.160(a), Judgment, reads in pertinent part:

> In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide:
>
> . . . .
>
> (2) for the recovery by one party from the other of an amount of money for *maintenance* . . . as may be just and necessary. . . .
>
> . . . .
>
> (4) for the division between the parties of their property . . . in the manner as may be just. . . .
>
> (Emphasis added).

tal property is very clear: "[A]limony is in no way a property settlement, but is the provision made for the support of the wife." *In re Marriage of Reilly,* 176 Mont. 239, 577 P.2d 840, 843–44 (1978) (quoting *Stefonick v. Stefonick,* 118 Mont. 486, 167 P.2d 848, 855 (1946)). *See also Oviatt v. Oviatt,* 355 N.W.2d 825, 827 (N.D.1984) (quoting *Williams v. Williams,* 302 N.W.2d 754, 758 (N.D.1981)) (concept of property division is distinct from that of spousal support). *See generally* 24 Am. Jur.2d *Dismissal, Discontinuance, and Nonsuit To Divorce and Separation* §§ 817, 872, 925 (1983); Note, *Property Division and Alimony Awards: A Survey of Statutory Limitation on Judicial Discretion,* 50 Fordham L.Rev. 415 (1981). We agree with this approach and consider it to be consistent with our earlier decisions in this area.

We have recognized a number of factors that the trial court must consider in deciding what property division is equitable. These factors, known as the *Merrill* factors, are:

> the respective ages of the parties; their earning ability; the duration and conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances, including the time and manner of acquisition of the property in question, its value at the time and its income producing capacity if any.

*Rose v. Rose,* 755 P.2d 1121, 1124 (Alaska 1989) (quoting *Merrill,* 368 P.2d at 547–48 n. 4).

In its Findings of Fact, the trial court did address essentially all of the *Merrill* factors. However, the court provided no explanation for treating the interim support as a distribution of marital property. Without an explanation, this court cannot determine whether the trial court abused its discretion.

The trial court failed to provide "sufficiently detailed and explicit findings 'to give [this] court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision.'" *Lang,* 741 P.2d at 1195 (quoting *Merrill,* 368 P.2d at 548). Accordingly, we remand this issue to the trial court to explain its ruling on Jeanne's interim support.

### 3. *Did the Superior Court Err in Finding 100,000 Shares of Petro Stock to be Steve's Premarital Property?*

■ Steve and Jeanne were married on January 28, 1984. During February 1984, Steve and other investors discussed the possibility of starting a small refinery and finalized these plans in the summer of 1984. Steve quit MAPCO and began working for Petro in October 1984.

Steve purchased 100,000 shares of Petro stock in the fall of 1984, using money taken from his MAPCO profit sharing account, a premarital asset. Steve later added Jeanne's name to the stock certificate for these shares. According to Jeanne's testimony, the money was taken from the profit sharing account to buy the stock because the price of the stock in the profit sharing account was high and it was a good time to sell. There was sufficient money in other marital accounts to purchase the 100,000 shares of Petro stock. These 100,000 shares of Petro stock were held jointly by the parties and Jeanne co-signed, with Steve, a promissory note for the pu. chase of land for the Petro refinery site.[6] This land purchase and the stock issue were initial steps in forming Petro.

Because the 100,000 shares were purchased with a premarital asset, the trial court determined, in Finding of Fact No. 13, that the 100,000 shares were premarital property:

> The Court finds that the 100,000 shares of Petro Star, Inc. represented by Stock Certificate No. 2 were purchased with

---

**6.** Steve and Jeanne jointly purchased a house on property next to the proposed Petro refinery site. Steve testified that this was done to provide a buffer of Petro controlled property around the refinery site: "We didn't want any kids running around the middle of the refinery."

separate premarital cash monies and are therefore the separate property of Stephen T. Davis.

Property available for distribution includes all property acquired during marriage, whether title is joint or separate. AS 25.24.160(a)(4)[7]; *Rose*, 755 P.2d at 1123; *Julsen v. Julsen*, 741 P.2d 642, 646 (Alaska 1987); *Carlson v. Carlson*, 722 P.2d 222, 224 (Alaska 1986). "Whether or not a particular piece of property is a marital or premarital asset 'is in large part a legal determination, involving the interpretation of AS [25.24.160(a)(4)], and applying legal principles to the facts of the case.'" *Julsen*, 741 P.2d at 646 n. 4 (quoting *Wanberg v. Wanberg*, 664 P.2d at 570). "With respect to the legal analysis employed at the trial court level, review is based upon [the supreme court's] independent judgment." *Id.*

This court has construed AS 25.24.-160(a)(4) strictly. *See Laing*, 741 P.2d at 656 (vested and nonvested pensions are marital property); *Wanberg*, 664 P.2d at 573–74 (entire equitable value of townhouse purchased after marriage subject to equitable distribution, not just appreciated value); *Bussell v. Bussell*, 623 P.2d 1221, 1223 (Alaska 1981) (condominium purchased after separation but before divorce held to be marital property); *cf. Rose*, 755 P.2d at 1125 (in marriage of short duration, boat purchased by husband after marriage not marital property); *Julsen*, 741 P.2d at 648 (inheritance received by one spouse during marriage not marital property).

In an analogous case, we upheld the trial court's determination that a four-plex purchased during the marriage was marital property even though the downpayment came from the husband's property, because the parties had demonstrated an intent to jointly hold the property. *Carlson*, 722 P.2d at 224–25. *Matson v. Lewis*, 755 P.2d 1126 (Alaska 1988) is similar. There we held that two pieces of real property, in which title was taken jointly by the parties, were marital property, despite the fact that the downpayment for the property came

from a premarital asset of only one of the parties. *Matson*, 755 P.2d at 1128.

In our view, the court's finding that the initial 100,000 shares were separate property is clearly erroneous. These shares were acquired, to use the language of the statute, "during coverture." While property acquired in exchange for separate property during a marriage does not necessarily lose its separate character, it will be regarded as marital if that is the intent of the owner of the separate property, or if circumstances indicate that the other spouse has made significant contributions with respect to the property. *See Wanberg*, 664 P.2d at 571–72.

The shares in question were held jointly in Steve's and Jeanne's names. It follows, in the absence of evidence to the contrary, that Steve intended that the property would be marital. *See In re Marriage of Smith*, 86 Ill.2d 518, 56 Ill.Dec. 693, 427 N.E.2d 1239, 1244 (1981) (stock certificates purchased by one spouse with nonmarital property prior to the marriage became marital property when spouse transferred title to joint ownership); *Carter v. Carter*, 419 A.2d 1018, 1022 (Me.1980) (a documentary transaction, absent contrary evidence, evidences an intention to transfer the property to the marital estate). *See generally* Note, *Wanberg v. Wanberg: Characterization of Property for the Purpose of Equitable Distribution*, 1 Alaska L.Rev. 143 (1984). These jointly held shares represented Steve's efforts to establish Petro, to which Jeanne had contributed significantly by co-signing the promissory note. For these reasons the shares should have been found to be marital property.

4. *Did the Superior Court Err in Not Including Steve's Contingent Stock in the Marital Property Distribution?*

■ Shortly after beginning work for Petro in October 1984, Steve concluded an employee agreement with Petro awarding him 100,000 shares of Petro stock after Petro had eighteen profitable months. At the time of trial, this stock had not been

---

7. *See supra* note 1 and accompanying text.

issued due to disputes over the interpretation of the employee agreement.

The trial court failed to make any specific finding on this point. The court merely noted in Finding of Fact No. 27 that all future earnings are separate property and will not be considered in determining an equitable distribution.

Jeanne argues that this stock should be treated similarly to a nonvested pension. A pension is earned during the marriage and becomes marital property subject to the contingency that it will not vest. *Laing*, 741 P.2d at 658. Steve argues that the stock should not be considered marital property because: (1) the issuance of stock is speculative; (2) if the stock is issued, it will be issued after the parties separated; (3) the eighteen months of profitable operations may occur partially or wholly after the parties separated; and (4) the stock may not be issued at all.

We agree with Jeanne that the stock should be treated similarly to a nonvested pension. With regard to nonvested pensions we have said that

> [t]he contingent nature of a nonvested pension presents simply a valuation problem, not bearing on the non-employee spouse's entitlement to a just share of the marital assets. Pension benefits are generally viewed as deferred compensation for services rendered and the employee spouse's right thereto is a contractual right. The fact that a contractual right is contingent upon future events does not degrade that right to an expectancy.
>
> ... The non-employee spouse's contribution to the pension asset is exactly the same whether the pension be labeled a mere *expectancy*, or a *contingent future interest.*

We are persuaded that the contingencies that may prevent the employee spouse from ever collecting his or her nonvested pension should not bar the non-employee spouse from recovering a share if the pension is in fact paid out. Indeed, a *contrary rule would frustrate the statutory command that Alaska courts effect a "just division of the marital assets."* ... It would be wholly inconsistent with this policy to ignore the existence of so substantial an asset as a party's pension rights.

*Laing*, 741 P.2d at 656 (citations omitted, emphasis added). *See generally* B. Goldberg, *Valuation of Divorce Assets* §§ 9.3, 9.4 (West 1984) (hereafter Goldberg).

Steve's contingent stock interest is similar to a nonvested pension in that both are contractual rights.[8] It was earned at least in part during the marriage. The applicable legal principle is that property earned during a marriage is marital property regardless of when it is transferred. *See Hartland v. Hartland*, 777 P.2d 636, 643 (Alaska 1989). If any stock is awarded to Steve pursuant to the employee agreement, that portion of the stock earned during the marriage is marital property.[9] *See In re Marriage of Judd*, 68 Cal.App.3d 515, 137 Cal.Rptr. 318, 323 (1977). *See generally* Goldberg at § 7.5.

### 5. *Did the Superior Court Err in Valuing the Petro Stock and in not Dividing the Stock?*

#### a. *Value*

■ In Finding of Fact No. 22 the superior court determined that the value of the marital property of 500,000 shares of Petro stock was $.28 per share. This was deter-

---

**8.** A "right to future employment benefits, whether subject to contingencies or not, is a 'contractual right,' 'not an expectancy but a chose in action, a form of property.'" *Marriage of Judd,* 68 Cal.App.3d 515, 137 Cal.Rptr. 318, 323 (1977) (quoting *In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561, 565 (1976)).

**9.** The financial calculations involved in this legal conclusion are straightforward. If Petro awards the contingent stock to Steve, Petro can be required to specify which months of profitability are the basis for the award. The number of profitable months that overlap with the months in which Steve and Jeanne were married can be determined. The ratio of the number of these overlapping months to the 18 profitable months would provide the percentage of the 100,000 shares of contingent stock that constitutes marital property and which is therefore subject to distribution among the parties.

mined primarily on the basis of the testimony of Steve's witness, Andrew Warwick.

Warwick valued the stock at $.27 per share. Warwick used a methodology called "Net Present Value of Cash Flow" which parallels the capitalization of earning approach specified in Internal Revenue Service Ruling 59–60. Warwick pointed out that there are several negative factors which are important in evaluating Petro's stock:

1.  it's a closely held corporation with stock disposition restrictions;

2.  one shareholder is entitled to the first 70% of any dividends until it receives $1.25 million, and only one small dividend has thus been paid;

3.  the corporation is short on cash and is not likely to declare a dividend in the near future;

4.  the corporation is not likely to experience the profits which it did initially, because of changed market conditions and circumstances; and

5.  Steve's stock represents only 7% of the total outstanding stock and is therefore a minority interest.

We do not believe that the trial court made a clear error in its determination; *i.e.*, we are not left with a firm conviction that a mistake has been made. Accordingly, we affirm the value of $.28 per share that the trial court assigned to Steve's stock.

#### b.  Dividing value rather than dividing stock

■ In Finding of Fact No. 23, the trial court awarded the 500,000 shares of marital property stock to Steve and awarded half of the value of that stock to Jeanne in the amount of $70,000. The court explained that it divided the total value of the stock on the basis of the duration of the marriage, the status of the parties, and the other findings set forth in the Findings of Fact. These findings incorporate the *Merrill* factors. The court explained that it awarded the stock to Steve because the "stock is important, necessary and instrumental in [Steve's] continued employment with Petro."

The court's equitable allocation of the marital property is reviewed under the abuse of discretion standard and "will not be disturbed unless it is clearly unjust." *Moffitt*, 749 P.2d at 346. The trial court did not abuse its discretion on this matter. The even distribution of the property is "presumptively just." *Hayes v. Hayes*, 756 P.2d 298, 300 (Alaska 1988); *Rose*, 755 P.2d at 1123. The court properly considered the role of ownership of the stock in Steve's employment in awarding the stock to him. The trial court's decision on this matter is affirmed.

#### B.  *Did the Superior Court Err in Excluding Jeanne's Expert Witness?*

■ Jeanne did not timely file witness lists as required by two pre-trial orders covering the period from just under twelve months, from January 16, 1987 to December 4, 1987. Jeanne's first witness list, which was filed four days late, did not list her expert, Shelby Stastny, CPA. Jeanne filed no new witness list following a change in trial dates. Then, after successfully moving to a new trial date, Jeanne filed her amended witness list ten days late. This list also did not include Mr. Stastny. Not until December 22, just three weeks before trial and eleven days before the close of discovery, did Jeanne file a second amended witness list. This one did include Stastny.

Nevertheless, the trial court ruled that Stastny could testify at trial if he was deposed by Steve's lawyer prior to trial. Steve's lawyer tried to coordinate a time to depose Stastny but was unsuccessful. The record is devoid of any suggestion that Steve's lawyer acted in less than good faith in this matter. Jeanne had two other expert witnesses on her first witness list who she declined to call. Given the circumstances of this case, we conclude that the trial court did not abuse its discretion in excluding Stastny's testimony.

#### C.  *Did the Superior Court Err in Not Finding Steve's Employment Contract to be Marital Property?*

■ Steve began working for Petro Star Refining Co. in October of 1984. Shortly

thereafter, he signed an employment agreement with Petro Star. This agreement provided for a salary of $112,000 per year and approximately $20,000 per year in taxable benefits. The employment agreement had a term of three years at the time of trial. There is no dispute that the employment agreement was entered into during the parties' marriage.

Jeanne argues that Steve's employment contract is marital property and therefore its value should be divide · between them in the same fashion that the court distributes other marital property. Jeanne bases this argument on the fact that Steve's employment contract began during the marriage.

In Finding of Fact No. 27, the trial court determined that earnings made by either party subsequent to the termination of the marriage are separate property. This is consistent with the fundamental principal that post-separation earnings are severable from marital property. *See Schanck v. Schanck*, 717 P.2d 1, 3 (Alaska 1986) (declining to specify when, as a matter of law, post-separation earnings become severable from marital property).

Jeanne cites no authority from this or any other jurisdiction which recognizes employment contracts as marital property subject to division upon divorce. While it is possible that an employment contract may have a deferred earning component which should be recognized as marital property, there is no indication that Steve's contract contained such a feature. We conclude that the trial court did not abuse its discretion on this issue and therefore affirm the trial court's determination.

## IV. CROSS–APPEAL

A. *Did the Superior Court Err in Determining that Steve's 500,000 Shares of Petro Stock Were Marital Property?*

In Finding of Fact No. 14, the trial court determined that 500,000 shares of Petro stock, evidenced by Stock Certificate Nos. 11, 13, 19, 21, and 26 were issued and received during the marriage and were therefore marital property.

As discussed above on pages 13 and 14, this court has construed AS 25.24.160(a)(4) to mean that *all* property acquired during the marriage is available for distribution, excepting only inherited property and property acquired with separate property which is kept as separate property.

Steve argues that the stock should be determined to be premarital property for three reasons. First, because Jeanne never possessed, maintained, managed, or benefitted the Petro stock. Second, because the stock is a performance bonus that reflects Steve's eighteen years of premarital professional education and hands-on experience. Third, because "any element of sacrifice, contribution, and community effort on Jeanne's part is lacking. Jeanne has received the benefits of all monies earned during the marriage and she is leaving the marriage better than when she entered."

Each of these arguments is legally irrelevant. Under Alaska law there is a *bright line* demarcation that all property acquired during marriage is marital property.[10] This relieves the court of the complex task of analyzing the multitude of events and experiences which could be said to contribute to earnings received during the marriage. This is not to say that earnings accrued before marriage, but paid during marriage should be counted as marital property. That situation, however, is not present here.

We affirm the trial court's determination that the 500,000 shares of Petro stock are marital property.

AFFIRMED in part, REVERSED in part and REMANDED for proceedings consistent with this opinion.

---

10. Subject to the exceptions noted above.