Billie G. JONES, Appellant,

v.

Virginia J. JONES, Appellee.

No. S–4340.

Supreme Court of Alaska.

June 26, 1992.

Richard D. Pennington, Richard D. Pennington & Associates, P.C., Anchorage, for appellant.

Kenneth C. Kirk, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

## I. INTRODUCTION

In this appeal, Billie Jones challenges the property division and alimony award ordered by the superior court pursuant to a divorce decree. Billie also challenges the superior court's award of attorney's fees.

## II. FACTS AND PROCEEDINGS

Billie and Virginia Jones were married in April 1951. They have four children, all of whom are emancipated. The couple separated in July 1988 after thirty-eight years of marriage. At the time of trial, they were both about 57 years old.

During most of the marriage, Billie worked for Shell Oil Company. Virginia, who never completed the ninth grade, was not employed during the marriage. Billie left Shell in 1982 to work for British Petroleum (BP). At the time of separation, he was earning about $145,000 per year. Billie was transferred to BP's Houston office in April 1989 and currently earns approximately $115,000 per year.

After Billie moved out of the couple's Anchorage home in July 1988, he and Virginia kept the same joint bank account, into which he continued to deposit his paychecks. Virginia usually made the mortgage payments and paid other marital obligations from this account. This arrangement continued until May 19, 1989, when Virginia filed a complaint in superior court requesting an order of separate maintenance. Billie counterclaimed for divorce and property division. In June 1989, the superior court ordered Billie to pay Virginia $2,900 per month in interim spousal support.

During the trial, two experts testified as to Virginia's ability to obtain employment. Dr. Scott Mackie, an expert in emergency and internal medicine, testified that he had treated Virginia in 1988 and 1989 for hypertension, post-menopause problems, chronic lower back pain, chronic leg pain due to a tumor, situational depression, and chronic anxiety. He said that she would always have some problems with anxiety and depression. He felt that Virginia's ability to work was limited by her back problems and emotional condition.

Richard Stone, an expert in vocational evaluation and rehabilitation, testified that Dr. Mackie's deposition and Virginia's medical records indicate that Virginia is capable of performing sedentary work that does not require her to lift more than ten pounds. He estimated Virginia's current earning potential at $1,160 per month, and at $1,498 per month if she were to obtain six months of formal training. He also testified that his investigation of the employment market in Bakersfield, California, where Virginia is presently residing, suggested that numerous job opportunities existed for Virginia.

In his September 1990 decision, Judge John Reese concluded that, in view of Mrs. Jones' age and debilitated status, it is not reasonable to expect her to become economically employed. The court found that

Virginia's "reasonable needs are somewhat in excess of $2,500.00 per month" and, in light of Billie's lucrative and secure career, ordered him to pay Virginia $2,500 per month in alimony until he retires at the age of 65. The court explained that these payments "will maintain Mrs. Jones in an appropriate station in life although somewhat less than the standard of living to which she was accustomed in Alaska." To satisfy her remaining needs, the court divided the marital property in a manner which, using the asset values stipulated to by the parties, allegedly gives Virginia seventy percent of the assets and Billie thirty percent of the assets. As part of this division, each party was awarded one-half of Billie's retirement account benefits. The court stated that it is appropriate for the parties to be economically separated from one another upon retirement.

In its Findings of Fact and Conclusions of Law, the court awarded Virginia $8,000 in attorney's fees. Billie appeals the superior court's decisions regarding property division, spousal support and attorney's fees.

## III. DISCUSSION

### A. *Did the court err in dividing the marital assets?*

■ Under Alaska law, a three-step process is used to divide marital assets. First, the court determines what property is available for distribution. *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983). This determination "is reviewed under the abuse of discretion standard, although it may involve legal determinations to which this court applies its independent judgment." *Lewis v. Lewis*, 785 P.2d 550, 552 (Alaska 1990). Second, the court values that property. *Wanberg*, 664 P.2d at 570. This valuation is a factual determination, and will be reversed only if clearly erroneous. *Lewis*, 785 P.2d at 552. Finally, the court equitably allocates the property. *Wanberg*, 664 P.2d at 570. This court will reverse an allocation decision only if the

trial court abuses its discretion in allocating the property, and then only if the allocation is clearly unjust. *Lewis*, 785 P.2d at 552.

1. Did the court err when dividing the proceeds from the sale of the motorhome?

The superior court's decision provides that "[t]he wife is to receive ... one-half of the 1973 motorhome proceeds at $3,140.50," and the "[d]efendant, husband, is awarded ... one-half of the 1973 Motorhome proceeds at $31,400.50." Billie argues that the discrepancy between the stated values of one-half the motorhome proceeds suggests that the court misvalued the proceeds and erroneously credited him with receiving more property than he actually received.[1]

This argument is without merit. There is a typographical error in the decision regarding the amount of Billie's share of the proceeds. This error was harmless. On page four of the decision is a total of the marital assets being awarded, $92,438. This is the amount which results if Billie is credited with the proper amount of the motorhome proceeds.

2. Did the court err in failing to take into account several transactions which occurred during the time of separation?

■ Billie next claims that the superior court failed to take into account four transactions which allegedly occurred after the parties' separation.

First, Billie argues that the court failed to consider Virginia's withdrawal of $26,-720 from the couple's joint account by means of 130 automatic teller machine withdrawals between July 1988 and June 1, 1989. Citing *Hartland v. Hartland*, 777 P.2d 636 (Alaska 1989), he claims that marital property dissipated after separation but prior to divorce must be recaptured in calculating the property available for distribu-

---

**1.** The parties stipulated that the motorhome was sold for $6,281. One-half of this amount is $3,140.50.

tion. In *Hartland,* we held that a party's share of marital assets can be reduced if he or she dissipated substantial amounts of marital assets for his or her own benefit during the parties' separation. *Id.* at 642.

Virginia maintains that Billie's assertion that she made these withdrawals is supported solely by Billie's recollection that he withdrew money only from the Anchorage Airport automatic teller machine. She also claims that he ignores the court's decision to use June 1989, not September 1988, as the date for division of the retirement benefits. Citing *Streb v. Streb,* 774 P.2d 798, 802 (Alaska 1989), she notes this court's holding that until a married couple ceases to operate as a financial unit, each party has the right to manage and control marital funds.

The record indicates that the superior court was aware of Billie's allegations that Virginia withdrew money from the joint account. As Virginia suggests, the court apparently did not take these transactions into account because it determined that the parties continued to operate as a financial unit until June 1, 1989. That is the date which the court used to value Billie's retirement funds. The court's decision to value the marital estate as of June 1, 1989 was reasonable, for the parties did not initially view the separation as ending their marriage. Virginia testified that she did not know during the initial period of separation that the marriage was over, and that Billie told her that it was not. She did not file a complaint requesting an order of separate maintenance until May 19, 1989. Under *Streb,* the court therefore did not abuse its discretion in excluding from the marital estate the alleged withdrawals made prior to June 1, 1989. *Hartland* is inapposite because the record contains no evidence that Virginia spent money for her own separate purposes prior to the date the parties ceased functioning as an economic unit.

Second, Billie argues that the court did not take into account Virginia's withdrawal of $3,326 from the parties' joint account on May 31, 1989. Because this withdrawal occurred prior to June 1, 1989, the date the court used in determining the property available for distribution, the court did not abuse its discretion in excluding the $3,326 from the marital estate.

Third, Billie claims that the parties loaned $7,020 to their daughter on November 15, 1988, and that the daughter repaid all $7,020 to Virginia. He argues that the court should have forced Virginia to account for this repayment. While it is not entirely clear from the record whether this amount was repaid, the record suggests that it was repaid between September 1988 and June 1989, when both parties continued to operate from joint accounts. Virginia could not recall exactly when the money had been repaid, but she said she knew "it wasn't very long afterwards the loan" that her daughter repaid it, suggesting that the loan was repaid prior to the date the parties ceased functioning as an economic unit. Again, the court did not abuse its discretion by excluding the loan repayments in the marital estate.

Fourth, Billie claims the court should have considered the $9,701 which he gave Virginia on November 16, 1989, in "an effort to balance the amounts received by the parties." While the court did not consider this money in its decision, it did consider the money in its Findings of Fact and Conclusions of Law, and reduced the amount owed by Billie to Virginia by that amount. Billie's criticisms are therefore unfounded.

3. Did the court err in failing to take into account Billie's equity in the Subaru?

Despite the parties' stipulation that Billie retained a 1987 Subaru with an equity of $122, the superior court failed to discuss this vehicle in its decision. It is unclear why the court did not discuss this vehicle. On remand, the court should take the car into account and, if necessary, adjust the distribution of the property accordingly.

4. Did the court err in failing to take into account the interim support payments?

██ Billie submits that the purpose of the court's order awarding Virginia $2,900

per month in interim support was to redistribute the parties' property. He claims that the $2,900 payments greatly exceeded Virginia's needs. He also argues that in cases where the amount of interim support awarded is as large as in this case,[2] the trial court must take the interim support payments into account when making a division of marital property.

As Virginia points out, Billie's argument is inconsistent with our holding in *Lewis* concerning the role of interim support in the allocation and distribution of marital property. *Lewis,* 785 P.2d at 552–54. Citing cases from other states, we wrote that "[i]n other jurisdictions the distinction between alimony and the distribution of marital property is very clear: '[A]limony is in no way a property settlement, but is the provision made for the support of the wife.' [citations omitted] We agree with this approach and consider it to be consistent with our earlier decisions in this area." *Id.* at 553–54. We reversed the superior court's decision to treat the interim support as a distribution of marital property, stating that the court provided no explanation for treating the interim support as a distribution of marital property. *Id.* at 554.

Because Alaska law distinguishes between interim support payments and marital property, Billie's argument that the court should have considered these payments when distributing the marital property is rejected.[3]

5. Did the court err in its valuation of the proceeds from the sale of the residence?

Billie claims that the court erred in its valuation of the proceeds from the sale of the family residence. Billie and Virginia received $42,739 from the sale of the house. The court credited each of the parties with one-half of this amount. Billie alleges that this was a mistake, because he made three house payments from post-separation income in the amount of $6,889. He claims that the court should have subtracted $6,889 from the amount it credited Billie as having received from the sale.

Virginia disagrees, arguing that these payments appear to have been made from the joint accounts, and the court was therefore correct in not including them in the marital estate.

The transcript indicates that Billie made these payments in June, July and August of 1989. Because these payments were made after the date the court determined the parties were no longer a financial unit, and because the payments were made from Billie's own funds, on remand the court should consider whether he should be given credit for the payments he made and, if necessary, adjust the distribution of the property accordingly.

6. Did the court fail to equitably allocate the marital assets?

■ Billie claims that the court failed to equitably allocate the marital assets. Relying upon his arguments that the court failed to consider many marital assets and failed to consider his interim support payments, Billie argues that the court did not achieve its goal of giving thirty percent of the marital assets to Billie. In reality, Billie argues, he received less than zero percent of the marital assets.

The court's decision reveals that it carefully considered the factors for determining an equitable division of marital assets which were set forth in *Merrill v. Merrill,* 368 P.2d 546, 547 n. 4 (Alaska 1962).[4] As

2. Billie paid interim support payments of $2,900 per month for sixteen months. He paid a total of $46,400 in interim support.

3. Billie's arguments that the interim payments were excessive and represent an attempt to redistribute the parties' property are also rejected.

4. In *Merrill v. Merrill,* 368 P.2d 546, 547 n. 4 (Alaska 1962), we wrote:
   It has been held that the principal factors to be considered by the trial court in determining the question of alimony or division of property as between the parties are the respective ages of the parties; their earning ability; the duration and conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances, including the time and manner of acquisition of the property in question, its value at the time and its income producing capacity if any.

such, we find that the court did not abuse its discretion in dividing the property.[5] We recognize, however, that the court may alter its disposition of the marital property after it takes into account the Subaru and the mortgage payments made by Billie.

### B. Did the court err in awarding alimony?

Billie argues that the superior court's award of spousal support of $2,500 per month is erroneous for several reasons. First, he claims that the court erroneously concluded that it is not reasonable to expect Virginia to be economically employed. Second, he claims that the alimony award was tainted by the court's failure to properly analyze the amount of property in the marital estate. Third, he suggests that the award represents an impermissible attempt to balance the parties' income rather than an effort to provide for Virginia's reason-

able needs. Finally, he maintains that Virginia exaggerated her support needs.

Alaska Statute 25.24.160(a) provides that spousal support may be awarded to the extent it is "just and necessary." In *Messina v. Messina*, 583 P.2d 804, 805 (Alaska 1978), we held that the standards provided in the Uniform Marriage and Divorce Act,[6] together with the *Merrill* factors, *supra* note 4, must be considered in determining whether an alimony award is just and necessary. In 1990, the Alaska Legislature amended AS 25.24.160(a)(2) to reflect this holding.[7] An award of alimony will not be set aside unless the trial court abused its discretion when determining whether alimony is just and necessary. *Richmond v. Richmond*, 779 P.2d 1211, 1215 (Alaska 1989).

We have recognized that awards of "rehabilitative alimony" are appropriate

---

**5.** We reject Billie's arguments that the court erred in considering Virginia's age when it divided the marital property and awarded spousal support. *See Schoning v. Schoning*, 550 P.2d 373, 374 (Alaska 1976) (recognizing that courts are to consider the ages of the parties in determining questions of spousal support and division of property).

**6.** In *Messina v. Messina*, 583 P.2d 804 (Alaska 1978), we wrote:

> The Uniform Marriage & Divorce Act, approved by the National Conference of Commissioners on Uniform State Laws and recommended for passage by the states by the American Bar Association, provides for alimony only if the spouse seeking maintenance:
> 1. lacks sufficient property to provide for his reasonable needs; and
> 2. is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian may not be required to seek employment outside the home. (footnote omitted)
>
> The comment pertaining to these provisions states:
> > The dual intention of this section and Section 307 [property division] is to encourage the court to provide for the financial needs of the spouses by property disposition rather than by an award of maintenance. Only if the available property is insufficient for the purpose and if the spouse who seeks maintenance is unable to secure employment appropriate to his skills and interests or is occupied with child care may an award of maintenance be ordered.

*Id.* at 804–05 (quoting Uniform Marriage & Divorce Act § 308(a)(1)).

**7.** AS 25.24.160(a)(2) provides that courts should make awards of separate maintenance "as may be just and necessary without regard to which of the parties is in fault." The 1990 amendments to this statute added a list of factors which courts must consider in making awards of separate maintenance:

> (A) the length of the marriage and station in life of the parties during the marriage;
> (B) the age and health of the parties;
> (C) the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage;
> (D) the financial condition of the parties, including the availability and cost of health insurance;
> (E) the conduct of the parties, including whether there has been unreasonable depletion of marital assets;
> (F) the division of property under (4) of this subsection; and
> (G) other factors the court determines to be relevant in each individual case;

The 1990 amendments do not change the outcome of this case. As we recognized in *Bays v. Bays*, 807 P.2d 482, 485 n. 5 (Alaska 1991) (citing Ch. 130, § 1, SLA 1990), "the express purpose of the 1990 amendments was to 'restate the principle factors found in the case law, not to change them, affect the interpretation given to them, or preclude changes or additions to them by other court rulings.'"

when the recipient spouse intends to apply the alimony toward job training designed to lead to employment. *See, e.g., Bussell v. Bussell,* 623 P.2d 1221, 1224 (Alaska 1981). We also have upheld "reorientation alimony" awards designed to "allow the requesting spouse an opportunity to adjust to the changed financial circumstances accompanying a divorce." *Richmond,* 779 P.2d at 1215 n. 6 (citing *Dixon v. Dixon,* 747 P.2d 1169 (Alaska 1987)). The purpose of both rehabilitative and reorientation alimony is to help a spouse adapt to the changed financial circumstances following his or her divorce. Either rehabilitative alimony or reorientation alimony where appropriate is, in general, to be preferred to permanent alimony because it is generally undesirable to require one person to support another on a long-term basis in the absence of an existing legal relationship.

■ The trial court apparently did not award Virginia rehabilitative or reorientation alimony because it found that she is not employable. We are not persuaded by Billie's arguments that the judge erred in making this finding. Virginia did not work outside of the home during her marriage and she failed in her efforts as a church volunteer after her separation from Billie. Doctor Mackie testified that she will continue to suffer from serious physical and mental problems which make future employment unlikely. While Mr. Stone testified that, based on Dr. Mackie's deposition and Virginia's medical records, he felt Virginia could find employment in Bakersfield, Mr. Stone appears to have ignored Dr. Mackie's medical conclusions regarding Virginia's disabilities. Because the record contains substantial evidence in support of the court's finding that Virginia is not employable, that determination was not clearly erroneous.

■ We do not address the remainder of Billie's arguments because we believe the trial court failed to adequately assess Virginia's needs before it awarded alimony. In determining whether alimony is just and necessary, a court is obliged to consider the "circumstances and necessities" of the parties. *Merrill v. Merrill,* 368 P.2d at 547 n. 4. While the court did find that Virginia's "reasonable needs are somewhat in excess of $2,500.00 per month," it did not make specific findings concerning her financial needs and expenses. Our review of the record reveals little evidence of Virginia's current "circumstances and necessities." [8] In the absence of specific findings concerning Virginia's financial needs, we are unable to evaluate whether $2,500 per month in alimony is just and necessary. We therefore vacate the alimony award and remand the issue of spousal support for findings concerning Virginia's financial needs. In unusual cases like this one, where due to Virginia's disabilities and lack of work experience the alimony award is sizable, it is imperative that the trial court inquire into the specific needs of the recipient spouse before making the award.

C. *Did the court err in awarding attorney's fees?*

Billie challenges the superior court's award of attorney's fees. He argues that the award was excessive since, as a consequence of the superior court's decision, Virginia's income will exceed his if she obtains employment.

■ In actions for divorce, attorney's fees awards are committed to the discretion of the court. *Rostel v. Rostel,* 622 P.2d 429, 432 (Alaska 1981), *overruled on other grounds, Moffitt v. Moffitt,* 749 P.2d 343, 347 n. 3 (Alaska 1988). The "prevailing party" standard of Rule 82 does not apply in divorce actions. *Siggelkow v. Siggelkow,* 643 P.2d 985, 988 (Alaska 1982). Instead, the court must base an award of fees on the parties' relative economic situa-

---

**8.** Virginia's financial declaration states that her total monthly expenses are $4,021, but this figure appears to overstate her actual needs. For example, Virginia claims that she pays $150 per month in telephone expenses, $250 per month for gas, oil, and auto repair, $200 per month for dental expenses, $600 per month for food and household supplies, and $500 per month for "incidentals." Unfortunately, the record contains no receipts or canceled checks which verify Virginia's claimed monthly expenses. In cases where a party requests a large permanent alimony award, that party must reasonably verify his or her claimed financial needs.

tions and earning power. *Johnson v. Johnson,* 564 P.2d 71, 76–77 (Alaska 1977), *cert. denied* 434 U.S. 1048, 98 S.Ct. 896, 54 L.Ed.2d 800 (1978); *Burrell v. Burrell,* 537 P.2d 1, 7 (Alaska 1975).

■■■ We disagree with Billie's contention that Virginia's income will exceed his income. Billie has a high-paying job as a manager in an oil company, and Virginia was found incapable of working. Because Billie's economic situation is far superior to Virginia's, the court did not abuse its discretion in awarding Virginia $8,000 in attorney's fees.

AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.

RABINOWITZ, Chief Justice, dissenting.

I dissent from the court's holding vacating the superior court's award of alimony and remanding the issue for findings concerning Virginia Jones' financial needs.[1] In my view the court's analysis of this alimony issue overlooks relevant findings by the superior court as well as explicit statutory criteria which must be considered by the superior court in making an alimony determination.

In relevant part AS 25.24.160 provides as follows:

(a) In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide

. . . .

(2) for the recovery by one party from the other of an amount of money for maintenance, for a limited or indefinite period of time, in gross or in installments, as may be just and necessary without regard to which of the parties is in fault; an award of maintenance must fairly allocate the economic effect of divorce by being based on a consideration of the following factors:

(A) the length of the marriage and station in life of the parties during the marriage;

(B) the age and health of the parties;

(C) the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage;

(D) the financial condition of the parties, including the availability and cost of health insurance;

(E) the conduct of the parties, including whether there has been unreasonable depletion of marital assets;

(F) the division of property under (4) of this subsection; and

(G) other factors the court determines to be relevant in each individual case;

In its finding number VII the superior court states:

*For the reasons given in the decision of court,* it is just and necessary that husband pay to wife the amount of $2,500 per month to begin October 1, 1990 and end upon ... the husband reaching age 65....

(Emphasis added.)

Review of the "Decision of Court" indicates that the superior court followed the mandate of AS 25.24.160(a)(2) in making its alimony determination. The superior court begins its analysis of this subject by stating its conclusion:

This court also determines that because of plaintiff's economic dependency upon defendant as discussed below, she should be entitled to spousal maintenance until defendant's retirement at the age of 65 in the amount of $2,500.00 per month.[2]

The superior court then notes that "This is a 38 year marriage"; that the parties are 57 years of age; that Virginia has "not worked outside of the home throughout this marriage"; that her education is less than ninth grade; that she has extensive physical impairments and psychological difficulties; and "[a]fter 38 years of marriage

---

**1.** I agree with all of the court's other holdings.

**2.** The effect of this provision is that Billie G. Jones' obligation to pay alimony terminates in eight years.

and at her mature age and debilitated status, it is not reasonable to expect her to become economically employed."

Of particular significance is the following portion of the superior court's decision:

Until the time of retirement, however, it will be necessary for Mrs. Jones to be partially supported by Mr. Jones. *Evidence indicates that $2,500.00 per month would be an appropriate level of alimony for Mr. Jones to pay during these remaining few years. This would maintain Mrs. Jones in an appropriate station in life although somewhat less than the standard of living to which she was accustomed in Alaska. It would also allow Mr. Jones to maintain an appropriate station in life and an appropriate standard of living as well.*[3]

(Emphasis added.)

In contrast to the above, the court appears to focus exclusively upon Virginia Jones' specific financial needs to the exclusion of all other relevant factors mandated for consideration by AS 25.24.160(a)(2).

As to the merits of this issue, I would affirm the superior court's award of alimony. I think it important to recognize the compelling facts which support the superior court's resolution of this issue. Here we have a marriage of 38 years' duration in which it is obvious that the parties mutually decided that Virginia would remain at home and raise their four children. At no time during the parties' 38 year marriage was Virginia employed outside the home (Virginia never completed the ninth grade). The record is also clear that given Virginia's age (57 years old), and the debilitated status of her health (both physical and emotional), the superior court was correct in its conclusion that it is not reasonable to expect Virginia to work. On the other hand, the evidence is uncontradicted that Billie Jones earns at least $115,000 annually.

Given the above, and the record support for the superior court's conclusion that Virginia's reasonable needs are in excess of $2,500 per month and that this amount of alimony will maintain Virginia at an appropriate station in life (for the eight years in question), I would affirm the superior court's award of alimony.[4]

3. *See* AS 25.24.160(a)(2)(A) note 1, *supra.*

4. My view that the superior court's award of alimony should be affirmed is based in part upon a construction of "just and necessary", and the other factors articulated in AS 25.24.-160(a)(2), which leads me to conclude that the legislature did not intend to limit alimony to subsistence levels for recipient spouses.