**Karen R. LEIS, Appellant,**

v.

**Robert H. HUSTAD, Appellee.**

**No. S–8775.**

Supreme Court of Alaska.

May 18, 2001.

---

16. *See State, Dep't of Commerce & Econ. Dev., Div. of Ins. v. Schnell,* 8 P.3d 351, 356 (Alaska 2000).

17. *See* Alaska R.Civ.P. 82.

Sarah J. Tugman, Anchorage, for Appellant.

Jody W. Sutherland, Law Office of Jody W. Sutherland, Anchorage, for Appellee.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

### OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

We address here property characterization and valuation issues arising out of Karen Leis and Robert (Bob) Hustad's divorce proceedings. We conclude that it was error to characterize the Muntean Escrow as Bob's separate property, to value Bob's retirement plan at the time of separation, and to find that the loan from Karen's parents was not a marital liability. We therefore reverse and remand for further proceedings. Because correcting these errors may significantly alter the distribution of assets, the superior court may, but is not required to, revisit the apportionment issue on remand.

## II. FACTS AND PROCEEDINGS

Karen Leis and Bob Hustad married in 1982, separated economically while still sharing the marital residence in 1991, and ceased sharing the marital residence in 1993. Following a three-day divorce trial, the trial court divided the parties' assets in October 1997.

Beginning in 1981 Karen and Bob cohabitated briefly in Bob's Anchorage house on Holly Lane before they married. After Karen purchased a condominium on Copperbush Court, the parties moved into the condominium, married, and rented out Bob's Holly Lane house. Karen's name was never placed on the title of the Holly Lane house, although the parties made house payments from a joint account, and deposited rental income from the house into a joint account.

After they married, the parties agreed to sell their houses and purchase a house at 1510 M Street. Karen's condominium sold first and provided the money for the down

payment on the M Street home. Bob's house sold in late 1982, producing cash used for marital purposes, and a receivable known as the "Muntean Escrow." Karen and Bob were both on the escrow account. Money from the escrow account was electronically deposited into a joint savings account, and was frequently redeposited into a joint checking account.

Bob worked for Reeve Aleutian Airways for 19.5 years, beginning in 1977, and had a 401(k) account administered by Principal Financial Group. Bob made no contributions to the account from 1991 until the time of trial. The trial court found that seventy-two percent of the 401(k) plan was earned during the marriage, and awarded Karen fifty percent of the marital portion of the plan. The trial court valued the marital portion of the plan at $63,111.43 as of March 31, 1993, a date that is close to the May 1, 1993 date of separation. The court characterized the loan taken against the plan in 1991 as a marital debt, and subtracted the $24,010.94 balance due on the loan at separation from the marital portion of the plan.

When they received $13,000 from Karen's parents in 1992, Karen and Bob signed a note that structured the transfer as a debt to be repaid with interest. Bob concedes that he signed the note. Karen made payments to her mother totaling $6,800 after the parties' economic separation.

Karen filed a complaint for divorce in August 1994. The trial court entered a decree of divorce and distribution of marital property in June 1998. Karen appeals the property distribution on various grounds.

## III. DISCUSSION

### A. Standard of Review

We review the trial court's characterization of property as marital or separate for abuse of discretion.[1] Property value determinations are factual decisions that we will overturn only if there is clear error.[2] We review the trial court's equitable allocation of property for abuse of discretion and will reverse only if the allocation is clearly unjust.[3] Any legal determinations made during this process are reviewed de novo.[4]

### B. It Was Error to Classify the Muntean Escrow as Bob's Separate Property.

Karen argues that the evidence does not support the finding that the Muntean Escrow was Bob's separate property. We agree.

Property that is acquired with separate property and kept as separate property is categorized as separate property.[5] Determining whether property is marital or separate "'is in large part a legal determination, involving the interpretation of AS 25.24.160(a)(4) and applying legal principles to the facts of the case.'"[6]

Bob argues that the Muntean Escrow is separate property because it was the product of the sale of his Holly Lane house. But separate property becomes marital "upon a showing that the parties intended to treat the property as marital."[7] The trial court found that "[t]he proceeds from the sale were all directed to Mr. Hustad and were treated as his separate property." These findings are clearly erroneous.

The evidence establishes that the parties intended to treat the Muntean Escrow as marital. Bob concedes in his brief that "the parties agreed to sell their houses and to buy a home ... together." This agreement to combine the separate property in essence transmuted the separate property into mari-

1. See Jones v. Jones, 835 P.2d 1173, 1175 (Alaska 1992) (citation omitted).

2. See Doyle v. Doyle, 815 P.2d 366, 368 (Alaska 1991) (citations omitted).

3. See Cox v. Cox, 882 P.2d 909, 914 (Alaska 1994) (citing Doyle, 815 P.2d at 368).

4. See id. at 913 (citing Lewis v. Lewis, 785 P.2d 550, 552 (Alaska 1990)).

5. See Lewis, 785 P.2d at 558.

6. Id. at 555 (quoting Wanberg v. Wanberg, 664 P.2d 568, 570 (Alaska 1983)).

7. Harrelson v. Harrelson, 932 P.2d 247, 251 (Alaska 1997) (quoting Cox, 882 P.2d at 916).

tal property.[8] The Muntean Escrow was listed in both Karen and Bob's names, and "'placing separate property in joint ownership is rebuttable evidence that the owner intended the property to be marital.'"[9] Additionally, it is undisputed that money from the escrow account was electronically transferred to a joint savings account, and then often transferred to a joint checking account.

Bob argues that the separate nature of the property is evidenced by his testimony at trial and his post-separation actions in depleting the account. This evidence is insufficient to overcome the presumption of intent created by placing Karen's name on the account.[10] Bob's self-serving testimony at trial is entitled to little weight because the parties' actions during the marriage are better indicators of the parties' intent during the marriage.[11] Bob's unilateral actions in depleting the account after the parties separated are also entitled to little weight-the court's inquiry should focus on the intent of the parties during the marriage.[12]

Bob further argues that Karen's name was placed on the Muntean Escrow "merely for administrative convenience." This argument is belied by the fact that the money was transferred from the escrow account into a joint savings account during the marriage. It is therefore not sufficient to overcome the presumption created by placing Karen's name on the escrow.[13]

Bob also argues that Karen has not satisfied the factors for determining whether real property is marital.[14] But these factors do not apply, because the Muntean Escrow account is no longer real property. In a sense, the real property was exchanged for a receivable debt, payable through the escrow account. The parties' intent determines the status of the resulting property.[15] The evidence establishes as a matter of law that the parties intended to transmute Bob's Holly Lane property into a joint asset.

### C. It Was Error to Value Bob's 401(k) Plan at the Time of Separation Rather than at the Time of Trial.

Karen argues that it was error to value Bob's 401(k) plan at the time of separation rather than the time of trial. We agree.

We have held that "while the date for *classification* of property is that of separation, the proper date for *valuation* is one as close as practicable to that of trial."[16] Pensions are valued at the time of trial, although the marital share of the pension is determined at the date of separation.[17] The trial court's valuation of the plan at the time of separation deprived Karen of the interest earned on the marital share of the plan.[18]

---

8. See *Nicholson v. Wolfe*, 974 P.2d 417, 423 (Alaska 1999) (citing *Chotiner v. Chotiner*, 829 P.2d 829, 833 (Alaska 1992)).

9. *Id.* (quoting *Chotiner*, 829 P.2d at 833).

10. *Cf. Brown v. Brown*, 947 P.2d 307, 311 (Alaska 1997) (holding that commingling separate property with marital assets does not necessarily transmute separate property into marital property).

11. *Cf. Larsen v. Municipality of Anchorage*, 993 P.2d 428, 433 (Alaska 1999) (expressing skepticism as to parties' testimony regarding their intent); *Carlson v. Carlson*, 722 P.2d 222, 224 (Alaska 1986) (holding that actions during marriage demonstrate intent); *Peterson v. Wirum*, 625 P.2d 866, 870 (Alaska 1981) (holding that self-serving statements are not considered probative).

12. See *Carlson*, 722 P.2d at 224.

13. See *Nicholson*, 974 P.2d at 423.

14. See *Harrelson*, 932 P.2d at 251.

15. See *Lewis*, 785 P.2d at 555.

16. *Cox*, 882 P.2d at 917 (citing *Ogard v. Ogard*, 808 P.2d 815, 819 n. 8 (Alaska 1991)).

17. See *Gallant v. Gallant*, 882 P.2d 1252, 1255 n. 4 (Alaska 1994) ("A pension, like any other marital asset, should be valued as of the date of trial. The earlier date when the marriage has functionally terminated ... is the date used for segregating marital from post-marital property.... The value of the marital component should be assessed as of the trial date ....") (citations omitted).

18. See *Schanck v. Schanck*, 717 P.2d 1, 4 (Alaska 1986) ("[I]nterest earned after filing on contributions made before filing [is] part of the marital assets. Interest earned on contributions made after filing [is] not included in the divisible property.").

▮ Bob cites several cases in which we have held that it was not an abuse of discretion to value a pension at the date of separation. But those cases involved circumstances absent here.[19] Bob made no contributions to the 401(k) plan between 1991 and the time of trial.[20] The trial court made no findings justifying a deviation from the standard valuation-at-the-time-of-trial principle. Deviation, absent a finding that deviation is warranted, is error. "While we recognized in *Ogard* that there may be special situations in which the date of separation is more appropriate, we held that the court must make specific findings in such cases as to why the use of this date is proper."[21]

We hold that it was error to depart from the valuation-at-the-time-of-trial principle in this case.

D. *It Was Error to Find that the Loan from Karen's Parents Was Not a Marital Obligation.*

Karen next argues that it was error to find that the loan from her parents was not a marital debt. We agree.

▮ Bob asserts that the obligation was not a loan, but was rather a pre-death distribution of Karen's inheritance. He also states that it is unlikely that Karen's mother will require her to repay the loan. But there was evidence at the trial that Karen has already made payments on this loan, and that Karen's mother expected the debt to be repaid. The trial court did not find that this obligation was not a loan, and it treated it as a loan in its findings. Bob did not offer evidence that Karen's mother is likely to forgive the debt.

▮ Absent a showing that Bob and Karen intended the debt to be separate, "the trial court must presume that a debt incurred during the marriage is marital and should consider it when dividing the marital estate."[22] The loan was evidenced by a promissory note, signed by both parties. At trial Bob argued that the loan was not used for marital purposes, and that $8,000 of the loan was placed in Karen's retirement account. This use does not overcome the marital presumption. Because Karen's retirement account was a marital asset, contributions made to that account were a marital use. Failure to treat this loan as a marital debt was error as a matter of law.[23]

E. *The Court on Remand May, in Its Discretion, Revisit the Apportionment Issue.*

The trial court's overall allocation of debts and assets was not 50/50, apparently to the great benefit of Karen.[24] This allocation of

19. *See Rodriguez v. Rodriguez,* 908 P.2d 1007, 1012–13 (Alaska 1995) (noting that "generally the proper date by which to value property is the date of trial," but that trial court may use date of separation in special circumstances, and holding that special circumstances are not present when husband has merely made mortgage payments during period of separation); *Nelson v. Nelson,* 736 P.2d 1145, 1147 (Alaska 1987) (misusing word "value," because there was no issue of valuation); *Schanck,* 717 P.2d at 4 (holding that interest earned on marital portion of plan is marital asset); *Hunt v. Hunt,* 698 P.2d 1168, 1172 (Alaska 1985) (allowing valuation at separation date because husband made substantial contributions to retirement account after separation).

20. Bob claims in his argument that he "was working and thus earning additional equity in the retirement account." Bob's brief elsewhere acknowledges that he made no contributions to the plan from 1991–1996. Bob's testimony at trial was that he was unable to afford contributions from 1991 1996 because he was making payments on the loan taken out against the account. Assuming Bob's claim is true, it is irrelevant. Post-separation contributions would simply increase the percentage of the plan that is characterized as non-marital, and Karen would still be entitled to the interest earned on the marital portion of the plan.

21. *Cox,* 882 P.2d at 917 (citations omitted).

22. *Coffland v. Coffland,* 4 P.3d 317, 321–22 (Alaska 2000).

23. *See id.*

24. Karen's failure to file the assets table required by Alaska Appellate Rule 212(c)(1)(k) hinders our evaluation of the allocation. Rule 212(c)(1)(k) requires appellants in appeals that "concern[ ] a property division in a divorce case, [to file] an appendix consisting of a table listing all assets and liabilities of the parties as reflected in the record, including the trial court's findings as to the nature (marital or individual), value and disposition of each asset or liability."

assets was within the trial court's discretion,[25] and it is not challenged here. But the corrections that will be required on remand may skew the apportionment of resources beyond the intentions of the trial court. The trial court may, in its discretion, revisit the apportionment issue, but it is not required to do so. In permitting the court to revisit this issue, we do not mean to imply that the court should revisit the issue, or that it should deviate from its original intentions.

## IV. CONCLUSION

For these reasons, we REVERSE the characterization of the Muntean Escrow as Bob's separate property. We REVERSE the valuation of Bob's retirement account at the time of separation, and REMAND for valuation at the time of trial. We REVERSE the characterization of the loan from Karen's parents as separate debt, and REMAND for further proceedings. The superior court on remand may, but need not, revisit the apportionment issue.

---

**25.** *See Cox,* 882 P.2d at 914 (citing *Doyle,* 815     P.2d at 368).