# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*In re Marriage of Wendt*, 2013 IL App (1st) 123261

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF SCOTT WENDT, Petitioner-Appellee, and ALISON WENDT, Respondent-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-3261 |
| Filed | August 16, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a marriage dissolution proceeding, the trial court properly determined that petitioner's bonus for the year 2012, if paid, would be considered nonmarital property, since petitioner had no contractual right to the bonus, which was a matter of his employer's discretion. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 10-D-7009, 10-D-7067; the Hon. Patricia Logue, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Jan R. Kowalski, of Kalcheim Haber, LLP, of Chicago, for appellant. |
| | |
| | No brief filed for appellee. |
| | |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion. Presiding Justice Lampkin and Justice Reyes concurred in the judgment and opinion. |

## OPINION

¶ 1    The instant case arises from the dissolution of the marriage of Scott Wendt and Alison Wendt. The sole issue before us concerns Scott's 2012 bonus from his employer, which, if issued at all, would be issued in February 2013.[1] Before the trial court, Alison claimed that nine-twelfths of the bonus is marital property because it accrued during the marriage, while Scott claimed it was nonmarital property because it was speculative and discretionary. The trial court found that the bonus was not marital property, characterizing it as an expectancy and not a contractually enforceable right. For the reasons that follow, we affirm.

¶ 2                              BACKGROUND

¶ 3    On July 14, 2010, Scott filed a petition for dissolution of marriage and, on July 15, 2010, Alison also filed a petition for dissolution of marriage.[2] The cases were consolidated by the trial court. Scott is a software developer with Citadel, LLC, and Alison is employed part-time as a teacher. The parties have a daughter, born in June 2009.

¶ 4    On September 9, 2010, Alison filed a petition for temporary maintenance and child support. On January 7, 2011, the court entered an agreed order on Alison's petition, finding that Scott's 2009 net income was $118,920. The court ordered Scott to pay $1,982 per month–20% of Scott's net income–to Alison in temporary child support and further ordered the parties to equally divide the costs of childcare expenses and ordinary medical, dental, and optical care for their daughter. The matter of temporary maintenance for Alison was entered and continued, and Scott was ordered to provide his 2010 year-end pay stub and W-2 when

[1]It is unclear whether the bonus was issued. Alison's brief on appeal was filed on February 13, 2013, and does not indicate that the bonus had yet been issued. Scott did not file an appearance or brief on appeal.

[2]According to Alison's motion to consolidate the cases, she was unaware of Scott's petition at the time she filed her petition for dissolution of marriage.

he received them, as well an any documents from his employer regarding his 2010 bonus.

¶ 5    On April 13, 2012, Alison filed a petition: (1) to vacate the January 7, 2011, order claiming Scott intentionally misrepresented his income and (2) to modify and determine retroactively the correct guideline child support amount that should be due and owing. The petition explained that any bonus Scott received for a particular year was issued by his employer at the beginning of the next year; for instance, Scott received his 2008 bonus in early 2009. The petition claimed that the agreed order for child support was based on Scott's 2009 base income, because he represented that he had not received a bonus for the 2009 calendar year, and his 2010 W-2 was not yet available. Scott also represented that he would not be receiving a bonus for the 2010 calendar year, to be paid in 2011. However, after issuing a subpoena to Scott's employer, Alison discovered that Scott was paid a $70,500 gross bonus payment on February 18, 2011, and received $10,500 on December 19, 2011, as a 2009 "mandatory deferral payout." Additionally, Scott received a $90,000 bonus on February 17, 2012.

¶ 6    Thus, according to the petition, Scott received a $68,235 gross bonus payment for 2008 in early 2009; received no bonus payment for 2009 in 2010; received a $70,500 gross bonus payment for 2010 on February 18, 2011; and received a $90,000 gross bonus payment for 2011 on February 17, 2012. Scott also received $10,500 as a 2009 "mandatory deferral payout" on December 19, 2011, which Alison was investigating to determine whether it was Scott's deliberate deferral of his 2009 bonus.

¶ 7    Based on Citadel documents[3] attached to Alison's petition, Scott's bonus took the form of "Participation Points" issued by Citadel that were converted to cash at a rate of $1 per point. The 2012 memorandum stated that Scott's "total award of 2011 Participation Points reflects both your individual performance and the Company's overall performance" and would be issued on February 17, 2012, "provided you are employed by Citadel and not under notice at that time." The memorandum further stated that "[y]ou will be eligible to receive 2012 Participation Points based on your individual performance, your demonstration of the characteristics described in the Citadel Leadership Model, and the Company's overall performance during 2012. All bonuses and awards are discretionary. Your entitlement to any bonus or award, and the amount of any bonus or award shall be determined and awarded, if at all, in the discretion of the Company. 2012 Participation Points will be governed by the relevant employee incentive program in effect when 2012 Participation Points are awarded."

¶ 8    On June 21, 2012, the trial court entered an agreed order on Alison's petition, finding that Scott's total gross income was $257,500 and his net income for purposes of child support was $179,566.55. The court ordered Scott to pay Alison $24,148 to reflect arrearage in child support and to pay $945 biweekly for child support, reflecting 20% of his net biweekly pay of $4,725. The court further ordered that, "[c]ommencing on June 1, 2012 and continuing thereafter, Scott shall pay Alison, within seven (7) days of his receipt, an amount equal to

_____

[3]The documents are unnamed, but appear to be correspondence between Citadel and Scott dated January 24, 2011, and January 23, 2012. They contain information about the bonus issued for the prior year and Scott's eligibility for the upcoming year's bonus.

Twenty Percent (20%) of the net of any additional compensation incident to his employment, whether bonus, mandatory deferral or otherwise."

¶ 9 On September 19, 2012, the trial court entered a judgment for dissolution of marriage, incorporating a marital settlement agreement between the parties. The marital settlement agreement contained the following provision concerning deferred compensation:

"1. Deferred Compensation. Incident to his employment through 8/31/12, Scott is entitled to receipt of certain deferred compensation, which shall be divided in kind Fifty Percent (50%) to each party, as follows:

b. 9/12ths of the 2012 Citadel bonus anticipated to be received in February 201[3]; and this issue is reserved."[4]

The next day, the trial court entered an agreed order for the parties to file memoranda of law concerning whether Scott's 2012 bonus, to be received in 2013, was marital property and thereby subject to division between the parties.

¶ 10 Alison's memorandum of law, filed on October 5, 2012, claimed that the portion of Scott's bonus accruing during the marriage was marital property since it was a contractual right and not an expectancy, drawing an analogy to a stock bonus. Scott's memorandum of law, filed the same day, claimed that the bonus was not property but merely future indeterminate income since he needed to be employed on the date that the bonus was distributed and the bonus was purely discretionary on the part of his employer.

¶ 11 On October 12, 2012, the trial court entered an order finding that "Scott's 2012 Bonus to be received if at all in February 2013, is not a contractually enforceable right and is not marital property as it was not acquired during the marriage pursuant to Section 503 and Scott must be working there to receive the bonus and it is an expectancy and not a written contract of employment." The court ordered that Scott was entitled to retain the entirety of the 2012 bonus as nonmarital property, other than the 20% that was owed for child support pursuant to the judgment for dissolution of marriage.

¶ 12 Alison filed a notice of appeal, and this appeal follows. Scott did not file an appearance on appeal, so we take the instant case under consideration on Alison's brief and the record alone.

¶ 13                                                ANALYSIS

¶ 14 On appeal, Alison argues that Scott's 2012 bonus, if issued, should be considered marital property and not nonmarital property as the trial court concluded. Consequently, if it is marital property, Alison argues that she is entitled to 50% of nine-twelfths of the bonus, as provided in the marital settlement agreement incorporated into the judgment for dissolution of marriage. As an initial matter, we emphasize that, no matter the outcome, any bonus received by Scott is expressly included in the calculation of his child support obligation, as

_____

[4]The marital settlement agreement is not contained in the record on appeal. However, the provision involving Scott's bonus was quoted in his memorandum of law concerning the status of his bonus, and Alison's brief on appeal quotes the same provision.

-4-

provided in the judgment for dissolution of marriage. Thus, the sole issue before us is whether Alison is entitled to any portion of the bonus as marital property.

¶ 15    Generally, the trial court's classification of an asset as marital or nonmarital will not be disturbed unless it is contrary to the manifest weight of the evidence. See *In re Marriage of Lundahl*, 396 Ill. App. 3d 495, 502 (2009). However, where the facts are undisputed and the credibility of witnesses is not at issue, the classification of an asset is reviewed *de novo*. *In re Marriage of Abrell*, 236 Ill. 2d 249, 255 (2010) (considering whether accumulated vacation and sick days are marital property *de novo*); *In re Marriage of Peters*, 326 Ill. App. 3d 364, 366 (2001) (considering whether a stock bonus was marital property *de novo*). See also *In re Marriage of Schneider*, 214 Ill. 2d 152, 162 (2005); *In re Marriage of Crook*, 211 Ill. 2d 437, 442 (2004). Since the issue in the instant case requires us to determine the legal effect of undisputed facts, we review it *de novo*. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 16    The classification of a nonvested, discretionary bonus issued after the entry of a judgment for dissolution is an issue that has not yet been considered in Illinois, but Alison argues that Scott's bonus should be considered property under both traditional definitions of property and under the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/101 *et seq.* (West 2010)). Black's Law Dictionary defines "property" as:

> "1. The right to possess, use, and enjoy a determinate thing (either a tract of land or a chattel); the right of ownership ***. *** 2. Any external thing over which the rights of possession, use, and enjoyment are exercised ***." Black's Law Dictionary 1335-36 (9th ed. 2009).

See also *Abrell*, 236 Ill. 2d at 257 (quoting Black's Law Dictionary definition of "property"). "Marital property" under the Act "means all property acquired by either spouse subsequent to the marriage," except for certain enumerated exceptions. 750 ILCS 5/503(a) (West 2010). All property acquired by either spouse after the marriage and before a judgment for dissolution of marriage is presumed to be marital property, unless it falls within one of the section 503(a) exceptions. 750 ILCS 5/503(b)(1) (West 2010). There is no claim that Scott's bonus is nonmarital property because it falls within one of the exceptions provided in section 503(a) of the Act. Instead, the trial court in the case at bar found that the bonus was not marital property because it was not property at all but was a mere expectancy. We agree with the trial court.

¶ 17    First, Alison does not dispute that Scott does not have an employment contract, making Scott's employment with Citadel at will. Thus, he does not have a contractual right to receive a bonus by virtue of having signed an employment agreement providing for one.

¶ 18    Next, the record demonstrates that Scott is eligible to receive a bonus for the year 2012 from his employer "based on [his] individual performance, [his] demonstration of the characteristics described in the Citadel Leadership Model, and the Company's overall performance during 2012." In his memorandum before the trial court, Scott also represented that "[t]he bonuses are based on the overall performance of Citadel, the performance of SCOTT's department within Citadel (Global Equities), the performance of SCOTT's group

-5-

within the department and on SCOTT's performance." However, Citadel, Scott's employer, specifically provides: "All bonuses and awards are discretionary. Your entitlement to any bonus or award, and the amount of any bonus or award shall be determined and awarded, if at all, in the discretion of the Company." Thus, it is explicitly the employer's decision whether to issue a bonus and the amount of such bonus, a decision which depends in part on factors unrelated to Scott's work; Scott is not automatically entitled to receive a bonus. Indeed, Scott did not receive a bonus for the 2009 calendar year despite having earned bonuses for 2008 and 2010.

¶ 19 Furthermore, Citadel's memorandum provides that "2012 Participation Points will be governed by the relevant employee incentive program in effect when 2012 Participation Points are awarded." The record has established that bonuses–comprised of Participation Points that have been converted into a cash payment–are awarded at the beginning of the next calendar year. Thus, the decision of whether Citadel would award Scott a bonus for the 2012 calendar year would be governed by the employee incentive program in effect in early 2013.

¶ 20 In sum, Scott does not have a contractual right to a bonus from his employer, but Citadel may choose to award a bonus in its discretion, a decision which is based on several factors and which would be governed by the employee incentive program in effect in early 2013, approximately five months after the dissolution of the parties' marriage. The right to the bonus is not automatic, and there has been at least one year in which Scott was not issued a bonus. Based on these facts, we cannot find that the bonus, if issued at all, constitutes marital property.

¶ 21 Alison acknowledges that "a discretionary bonus is not a property right vis-a-vis the employer and Scott," but argues that "Scott's bonus is nonetheless a marital property right vis-a-vis Alison." We do not find this argument persuasive.

¶ 22 Alison draws an analogy between Scott's bonus and a pension, which is marital property under the Act, citing to *In re Marriage of Hunt*, 78 Ill. App. 3d 653 (1979). In *Hunt*, the appellate court held that "an employee spouse's contractual right to a pension or profit-sharing interest is 'property' under section 503 of the [Act], regardless of whether the interest is matured, vested or nonvested, or contributory or noncontributory" and that "[a]ny part of such pension or profit-sharing interest earned by the employee spouse while married is property 'acquired' during marriage within the meaning of section 503 and is, therefore, marital property." *Hunt*, 78 Ill. App. 3d at 658-59. In its analysis of unvested pensions, the *Hunt* court relied on the Supreme Court of California's decision in *In re Marriage of Brown*, 544 P.2d 561 (Cal. 1976).

¶ 23 In *Brown*, the California court overruled a previous case in which it had found that nonvested pension rights were not property but were expectancies. The *Brown* court, however, found that nonvested pension rights were not expectancies, noting that "the defining characteristic of an expectancy is that its holder has no *enforceable right* to his beneficence." (Emphasis added.) *Brown*, 544 P.2d at 565. Instead, the *Brown* court noted that "[s]ince pension benefits represent a form of deferred compensation for services rendered [citation], the employee's right to such benefits is a contractual right, derived from the terms

of the employment contract. Since a contractual right is not an expectancy but a chose in action, a form of property [citations], *** an employee acquires a property right to pension benefits when he enters upon the performance of his employment contract." *Brown*, 544 P.2d at 565. Thus, the court concluded that nonvested pension rights could constitute community property subject to division upon dissolution of a marriage. *Brown*, 544 P.2d at 569.

¶ 24    In the case at bar, we cannot agree that Scott's bonus is analogous to the pension rights discussed in *Hunt* and *Brown* because both cases concerned the contractual right to pension benefits. However, as noted, Scott does not have a contractual right to a bonus, which is issued at his employer's discretion. Indeed, as the *Brown* court noted, since Scott has "no *enforceable right* to [his employer's] beneficence" (emphasis added) (*Brown*, 544 P.2d at 565), Scott's bonus is an expectancy and not a property right. Accordingly, we find Alison's attempt to draw an analogy between Scott's bonus and pension benefits to be unpersuasive.

¶ 25    Alison also points to other jurisdictions, claiming that a majority of other states addressing the issue have concluded that cash bonuses are marital property to the extent that marital efforts were expended during the marriage. Although Alison cited a number of cases from other jurisdictions that she claims support her argument, we find these cases unpersuasive because they do not contain the factual scenario at issue here. In most of Alison's cited cases, either the employee spouse had an employment agreement or the payment that was considered by the court was received prior to the entry of the judgment for dissolution of marriage. See, *e.g.*, *Wilson v. Wilson*, 741 S.W.2d 640, 644 (Ark. 1987) ("[A]ppellee's employment agreement with [his employer] *required* the company to pay appellee an incentive bonus based on his productivity and the profitability of the company." (Emphasis in original.)); *Byington v. Byington*, 568 N.W.2d 141, 143 (Mich. Ct. App. 1997) (defendant negotiated a compensation package with his employer, including contingent bonuses and incentives that were received prior to the judgment of divorce); *Pruitt v. Pruitt*, 94 S.W.3d 429, 432, 433-34 (Mo. Ct. App. 2003) (judgment for dissolution entered in November 2001; cash bonus earned during the marriage and received in February 2000 was marital property); *Myhra v. Myhra*, 756 N.W.2d 528, 535 (Neb. Ct. App. 2008) (decree of dissolution of marriage entered in 2006; bonus received in 2006 for work performed in 2005). However, in the case at bar, there was no employment agreement that would provide a contractual right to a bonus, nor was the bonus received prior to the entry of the judgment for dissolution of marriage.

¶ 26    Of the cases in other jurisdictions, the one Alison claims is most factually similar to the case at bar is the Supreme Court of Alaska's decision in *Lewis v. Lewis*, 785 P.2d 550 (Alaska 1990). In that case, the husband executed an employment agreement awarding him 100,000 shares of his employer's stock if the employer had 18 profitable months, and the stock had not been issued at the time of the trial. *Lewis*, 785 P.2d at 555-56. The wife argued that the stock should be considered marital property similar to a nonvested pension, and the Supreme Court of Alaska agreed. *Lewis*, 785 P.2d at 556. The court reasoned: "[The husband's] contingent stock interest is similar to a nonvested pension in that both are contractual rights. It was earned at least in part during the marriage. The applicable legal principle is that property earned during a marriage is marital property regardless of when it is transferred. [Citation.] If any stock is awarded to [the husband] pursuant to the employee

agreement, that portion of the stock earned during the marriage is marital property." *Lewis*, 785 P.2d at 556.

¶ 27    We cannot agree that *Lewis* is factually similar to the case at bar. Here, there was no employment agreement providing for a bonus as in *Lewis*. Thus, we cannot say that Scott's right to a bonus was a contractual right similar to a nonvested pension.

¶ 28    Finally, Alison also draws an analogy between Scott's bonus and a stock bonus, relying on *In re Marriage of Peters*, 326 Ill. App. 3d 364 (2001). In that case, the husband executed an independent sales representative agreement with his employer, which provided that if the husband represented the company for 10 consecutive years and averaged a certain amount in annual collected gross profits, the company would transfer him a percentage of its stock. *Peters*, 326 Ill. App. 3d at 365. The husband had been with the company for five years when the parties dissolved their marriage. *Peters*, 326 Ill. App. 3d at 366. The trial court determined that the stock bonus was not marital property because it was future compensation for future efforts and his receipt of the bonus was speculative. *Peters*, 326 Ill. App. 3d at 366. On appeal, the appellate court determined that the trial court erred in concluding that no part of the bonus could be marital property. *Peters*, 326 Ill. App. 3d at 369.

¶ 29    The *Peters* court considered cases from other jurisdictions, but noted that in most of them, the bonus was received by the time of the dissolution; the court found the *Lewis* decision to be the most similar to the case before it. *Peters*, 326 Ill. App. 3d at 367. Examining Illinois case law, the *Peters* court noted that pension benefits acquired after the marriage but before judgment for dissolution of marriage were marital property, and that nonvested stock options acquired during the marriage were marital property when exercised. *Peters*, 326 Ill. App. 3d at 368. The *Peters* court concluded that the stock bonus was similar to nonvested pension benefits, since the husband was required to remain employed for a certain time prior to having a right to receive it. *Peters*, 326 Ill. App. 3d at 369. The court also concluded that the stock bonus was similar to a nonvested stock option, which was considered marital property, since the recipient had the potential to receive stock in the employer. *Peters*, 326 Ill. App. 3d at 369. The court agreed with the *Lewis* court that any portion of the stock bonus earned during the marriage should be considered marital property, reasoning that "[t]he bonus is a contractual right that petitioner was working toward during the marriage and thus was more than a mere expectancy." *Peters*, 326 Ill. App. 3d at 369.

¶ 30    In the case at bar, as noted, there was no employment agreement analogous to that in *Peters* and Scott was not contractually entitled to a bonus. Consequently, we do not find the decision in *Peters* to be "controlling *stare decisis*" as Alison claims.

¶ 31    As a final matter, Alison claims that the speculative nature of the bonus is irrelevant to the determination of whether it is marital property. However, our supreme court, in finding that accumulated vacation and sick days were not marital property, noted:

"[T]he value of accrued vacation and sick days is speculative and uncertain until a party actually collects compensation for those days at retirement or termination of his employment. A party cannot receive cash for those days prior to retirement or termination. In fact, it is possible that in some cases, an employer might change its policy concerning the right to receive compensation for accrued sick days, limiting or

-8-

eliminating that right entirely." *Abrell*, 236 Ill. 2d at 266-67.

Similarly, in the case at bar, Scott's bonus is speculative until it is actually awarded by his employer, and Citadel could change its policy for awarding bonuses, as is contemplated by its disclaimer that "2012 Participation Points will be governed by the relevant employee incentive program in effect when 2012 Participation Points are awarded." Consequently, we cannot find that the trial court erred in determining that the 2012 bonus, if issued, is nonmarital property.

¶ 32                                    CONCLUSION

¶ 33        We find that the trial court did not err in finding Scott's 2012 bonus, if issued, is nonmarital property because Scott did not have a contractual right to the bonus, which was issued in his employer's discretion.

¶ 34        Affirmed.