# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black;">

*In re Marriage of Shores*, 2014 IL App (2d) 130151

</div>

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF CLYDE W. SHORES, Petitioner-Appellant, and JANE SHORES, Respondent-Appellee. |
| District & No. | Second District<br>Docket No. 2-13-0151 |
| Filed | May 16, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an appeal challenging an award of child support based on a bonus plaintiff earned through his employment and two reimbursement payments he received from his employer, the appellate court reversed the increase based on the bonus, since the bonus was speculative income that was earned during the obligation period but was not paid until after the support period had ended and, therefore, was not income for purposes of the support period at issue; however, the reimbursement payments were not speculative, both were earned during the obligation period, and even though one of the payments was received after the obligation period ended, both were income for purposes of the obligation period. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 07-D-540; the Hon. Katherine M. Moran, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | Thomas G. Kenny, of Kenny & Kenny, of Wheaton, for appellant.<br><br>Richard C. Slocum and Thomas E. St. Jules, both of Dreyer, Foote, Streit, Furgason & Slocum, P.A., of Aurora, for appellee. |

JUSTICE SPENCE delivered the judgment of the court, with opinion. Justices Hudson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1     Petitioner, Clyde W. Shores, appeals the trial court's award of an increase in child support, arguing that the trial court erred by including three items as income under section 505(a)(3) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/505(a)(3) (West 2010)) in its child support calculation for January 1, 2010, through July 12, 2010. The three items were a bonus that petitioner received in 2011 for his performance in 2010 and two relocation reimbursements he received in the amounts of $20,355.21 and $14,487.62. In order to answer when an item counts as section 505(a)(3) income, we analogize child support income to the treatment of marital assets. We find that for purposes of child support, when future income is speculative, it is income not when earned but rather when received. Accordingly, we affirm in part, reverse in part, and remand.

¶ 2                                     I. BACKGROUND
¶ 3     This is an appeal from an order modifying child support, following a postjudgment, domestic relations proceeding. The proceeding followed the dissolution-of-marriage judgment originally entered on July 19, 1999, between petitioner and respondent, Jane Shores, in California and enrolled in the Kane County circuit court on May 17, 2007.

¶ 4     The parties were married on August 9, 1986, and they had two children during their marriage, Katherine born March 8, 1989, and Emily born July 13, 1992. After their marriage dissolution, the parties shared joint custody of the children, with respondent having primary residential custody. The judgment provided that petitioner would pay respondent child support of $2,900 per month (allocated as $1,088 for Katherine and $1,812 for Emily) until each child married, died, was emancipated, reached 18 years of age and was not a full-time high school student residing with respondent, or reached 19 years of age, or upon further order of the court, whichever occurred first.

¶ 5     On October 18, 2007, respondent filed a petition to increase child support and a petition for contribution to college expenses for Katherine. Thereafter, on October 24, 2009, petitioner filed a petition for contribution to college expenses for Emily. On August 31, 2009, petitioner filed a petition for modification of child support, alleging that he lost his job and was unable to pay child support.

¶ 6     The two petitions for contribution to college expenses were resolved on July 8, 2010, by an agreed order. The agreed order provided that each party would pay for half of each child's college expenses.

¶ 7    Regarding the petition to modify child support, the trial court held a nonevidentiary hearing on February 14, 2011. After considering the parties' briefs and holding oral argument, the trial court entered an order that provided, in relevant part, that all relocation reimbursement payments received by petitioner would be included in calculating child support. Furthermore, the order required that petitioner pay child support on all bonuses, incentive stock receipts, stock options, or any other type of compensation paid in 2011 for work performed in 2010 prior to July 13, 2010.

¶ 8    On March 3, 2011, the trial court entered an order setting the amount of child support petitioner owed from 2007, 2008, and 2009 (total: $30,721.65). The March 3 order also continued to April 26, 2011, the matter of 2010 support due, although the matter was not heard until September 4, 2013. In the interim, petitioner filed a motion on July 17, 2011, for termination of his obligation to Katherine, which the trial court granted on July 28, 2011, except for claims for contribution to expenses incurred prior to the child's emancipation.

¶ 9    On July 28, 2011, petitioner filed a motion to reconsider the February 2011 order. Petitioner argued that income he received after Emily's emancipation was not subject to child support, and he urged the court to reconsider that portion of its February 2011 order. The court eventually denied the motion for reconsideration on January 31, 2013.

¶ 10    At a September 12, 2011, hearing, the following documents were admitted: petitioner's 2010 jointly filed tax return for himself and his current wife; his letter of employment with Baxter Healthcare Corporation (Baxter) as vice president of global marketing, dated October 16, 2009, and confirming his eligibility to participate in the company's "Management Incentive Compensation Program" (MICP); his 2010 form W-2; his wife's form W-2; his wage/paycheck statement from Baxter, dated July 9, 2010; his March 18, 2011, wage statement from Baxter that included a $100,931.04 MICP bonus; a copy of the Baxter MICP policy; and copies of his 2009-10 and 2010-11 annual compensation review summaries from Baxter. Also, attached as an exhibit to respondent's request to admit was a summary of relocation expenses reimbursed to petitioner from November 19, 2009, through September 14, 2010, which provided a breakdown of $14,487.62 paid to petitioner after Emily's emancipation.

¶ 11    Petitioner testified to the following at the September 12, 2011, hearing, which was continued to June 11, 2012. He began working for Baxter on October 26, 2009, and he participated in the MICP offered by Baxter. He received a *pro rata* share of the MICP bonus in 2010 for his partial year of employment in 2009, and he was a full-year participant in 2010. When asked if he received an MICP bonus in 2011 for his work in 2010, he answered, "I received a[n] MICP bonus" in March 2011. His compensation in 2010 was $350,406.54, according to his 2010 W-2, and his wife's was $247,339 for the same year. He testified as to his Baxter pay stub for July 9, 2010–the last paycheck he received prior to Emily's emancipation–verifying that he received $10,984.62 for that pay period. He testified that he received a raise in March, although he was unable to confirm the exact amount.

¶ 12    Petitioner testified to his MICP bonuses received in 2010 and 2011, in amounts of $21,093.33 in 2010 for the 2009 performance year (a *pro rata* share of what he would have earned had he been employed for all of 2009), and $100,931.04 in March 2011 for the 2010

performance year. He further testified that, under Baxter's MICP, employees who are terminated prior to February 1 of a given year, for any reason other than those specifically permitted, were not eligible to receive an MICP bonus for performance during the previous or current year. Petitioner testified that, for example, he would have to have been employed as of February 1, 2011, to be eligible to receive his bonus for work in 2010.

¶ 13 Petitioner further testified that he received a relocation reimbursement in the amount of $14,487.62 after Emily's emancipation. Petitioner further acknowledged a $20,355.21 reimbursement on his July 9, 2010, pay stub. He had resided in St. Charles, Illinois, prior to accepting employment with Baxter, which had its offices 60 miles away from his St. Charles home, in October 2009. In November 2009, petitioner purchased a second home in Lake Forest, only eight or nine miles from the Baxter offices, because he felt that a daily commute of 120 to 130 miles was not sustainable. He testified that the reimbursements were for duplicate housing expenses that he incurred as a result of maintaining his home in Lake Forest. The reimbursements were for the actual expenses of his Lake Forest home (mortgage, interest, taxes, etc.), and he continued to make similar payments on his St. Charles home. He testified that he repaid both the $14,487.62 and the $20,355.21 reimbursements to Baxter in May 2011 after he voluntarily terminated his employment with Baxter, pursuant to his employment agreement. He ended his employment with Baxter to take a different position in California with an annual salary around $330,000. He chose to own two homes simultaneously while working for Baxter because of the promise of reimbursement for duplicate housing costs.

¶ 14 Counsel for petitioner and respondent made closing arguments on July 2, 2012. The trial court confirmed that the sole issue before it was the amount of child support due for January 1, 2010, to July 13, 2010, which was the date Emily was emancipated (*i.e.*, turned 18 and had graduated from high school). Respondent argued that the relocation reimbursement received by petitioner prior to July 13 in 2010–the payment of $20,355.21–was income for purposes of child support. Furthermore, respondent argued that the $14,487.62 relocation reimbursement, which petitioner received after Emily's emancipation but for expenses incurred prior to emancipation, should likewise be included in the child support calculation. With regard to the MICP bonus, respondent argued that the $100,931.04 bonus that petitioner received in March 2011 was for his work performance in 2010 and that therefore a prorated portion of that bonus should be included in calculating the 2010 child support. Respondent argued that 52.88% of that bonus should be subject to child support (basing the percentage on the proportion of time in 2010 before Emily was emancipated). The total balance respondent claimed for 2010 child support, based on the MICP bonus, reimbursements, and other income, was $21,329.61.

¶ 15 Petitioner argued that the MICP bonus received after Emily's emancipation was not subject to child support, because his continued employment after the child's emancipation was necessary to receive the bonus. Furthermore, petitioner argued that he repaid all of the reimbursements after he left his employment with Baxter (pursuant to his employment contract) and that therefore they should be excluded from his income for purposes of child support. He argued that, even if he had not repaid the reimbursements, the reimbursements were not income, because they did not increase his wealth–they were repayments for out-of-pocket business expenses.

- 4 -

¶ 16 The trial court issued its written opinion and order on August 27, 2012. Regarding respondent's petition to increase child support, the court discussed petitioner's MICP bonus. The trial court said:

> "Basically, the MICP bonus is based on the employee's performance as well as Baxter's. *** The MICP program provides [that] bonus/awards will be paid out as soon as possible following the end of the performance year for which they correspond. Common sense dictates that the bonus [petitioner] received on March 18, 2011, was for the 2010 performance year."

Accordingly, the trial court found that the 2011 bonus should be included in petitioner's 2010 child support income. Regarding the relocation expense reimbursements that petitioner paid back in full after voluntarily terminating his employment with Baxter, the trial court did not find that they were income for purposes of child support.

¶ 17 Taking into account both the child support that petitioner had already paid and the child support that he owed on additional income from January 1 through July 12, 2010, the trial court ordered petitioner to pay an additional $13,770.49 in child support for 2010.

¶ 18 Both petitioner and respondent filed respective motions for reconsideration; petitioner argued, in pertinent part, that income received after July 12, 2010 (*e.g.*, the 2011 MICP bonus), should not be income for child support, and respondent argued, in pertinent part, that the trial court erred by not including relocation expense reimbursements in its calculation of petitioner's income from January 1 through July 12, 2010.

¶ 19 The trial court resolved the parties' motions to reconsider in its January 31, 2013, opinion and order. First, addressing respondent's motion, the trial court clarified that it did not include the $20,355.21 relocation reimbursement in petitioner's 2010 income because, although that payment was listed on petitioner's July 9, 2010, wage statement, it was not included in petitioner's year-to-date total earnings on that same wage statement. The $14,487.62 relocation reimbursement was likewise excluded from income for the relevant time period because there was no corresponding wage statement to show when the payment was made. However, the court's review of petitioner's testimony showed that he admitted that both reimbursements received were for expenses incurred prior to July 13, 2010, and it was not refuted that he received the $20,355.21 reimbursement prior to July 13, 2010. Moreover, the court held that petitioner "being required to re-pay these sums to Baxter when he left the company *** is not dispositive to the issue of whether these payments are income and should be included when calculating [his] net income." The court reasoned that these payments of $20,355.21 and $14,487.62 "effectively increased his income" for January 1, 2010 through July 12, 2010. Therefore, the court found that it erred in not including those amounts in the determination of child support and granted respondent's motion in that respect.

¶ 20 Turning to petitioner's motion to reconsider, petitioner argued that income received after July 12, 2010, including the MICP bonus received in 2011 and the relocation reimbursements of $20,355.21 and $14,487.62, should not be included in calculating his income for January 1 through July 12, 2010. The trial court found that bonuses earned and reimbursements for expenses incurred prior to July 13, 2010, were to be included in petitioner's 2010 child support income. The trial court reasoned that "the receipt of the bonus and the relocation payments

positively affected [petitioner's] ability to provide for himself and for his children." The trial court accordingly denied petitioner's motion in part.[1]

Petitioner timely appealed.

## II. ANALYSIS

### A. Standard of Review

Petitioner argues that the issues before the court involve interpretations of statutes, namely sections 505(a)(3) and 510(d) of the Act (750 ILCS 5/505(a)(3), 510(d) (West 2010)), and that therefore our review should be *de novo*. Respondent does not address the standard of review. While we generally review a trial court's net income determination for an abuse of discretion (*e.g.*, *In re Marriage of Deem*, 328 Ill. App. 3d 453, 457 (2002)), whether an item is income under section 505 of the Act is an issue of statutory construction and thus a question of law we review *de novo* (*In re Marriage of Lindman*, 356 Ill. App. 3d 462, 465 (2005); *Einstein v. Nijim*, 358 Ill. App. 3d 263, 267 (2005)).

Here, we are faced with issues of statutory construction, particularly, of what constitutes income under section 505(a)(3) of the Act (750 ILCS 5/505(a)(3) (West 2010)). At issue are whether the bonus received in 2011 for work performed in 2010 is section 505(a)(3) income (on a *pro rata* basis) for 2010, whether the relocation reimbursement received prior to Emily's emancipation but subsequently repaid is section 505(a)(3) income, and whether the relocation reimbursement received after Emily's emancipation but for an expense incurred prior to emancipation is section 505(a)(3) income. The facts are not in dispute, so the crux lies upon our interpretation of section 505(a)(3), and thus we shall review the trial court's order *de novo*.

### B. Characterization of the MICP Bonus

The first issue we examine is whether the trial court properly included a *pro rata* share of petitioner's MICP bonus, received in March 2011, as section 505(a)(3) income for the period of January 1, 2010, through July 12, 2010. Petitioner argues that a child support obligation terminates when a child is emancipated under section 510 of the Act. This is not what is in dispute, as there is no disagreement that petitioner's child support obligation ended upon Emily's emancipation. Rather, at issue is whether the bonus constituted section 505(a)(3) income when it was earned or when it was received. We proceed therefore to petitioner's argument that his bonus should not be included in section 505(a)(3) income for 2010.

Petitioner argues as follows. Net income under section 505(a)(3) of the Act is defined as "the total of all income from all sources," minus enumerated deductions. 750 ILCS 5/505(a)(3) (West 2010). The supreme court discussed the plain and ordinary meaning of section 505(a)(3)

---

[1]The trial court did agree with petitioner that a relocation gross-up payment (a payment to cover what petitioner would have to pay in taxes on the relocation reimbursements) of $10,554.25 should not be included in calculating his income for purposes of child support. The court also agreed that appropriate taxes, Medicare payments, and medical insurance premiums should be deducted in reaching his net income.

income in *In re Marriage of Rogers*, 213 Ill. 2d 129 (2004), as "simply 'something that comes in as an increment or addition ***: a gain or recurrent benefit that is usu[ally] measured in money ***: the value of goods and services received by an individual in a given period of time.' " *Id.* at 136-37 (quoting Webster's Third New International Dictionary 1143 (1986)). The supreme court also cited Black's Law Dictionary, which defines income as money or payment one receives from employment, business, investments, gifts, etc. *Id.* at 137 (citing Black's Law Dictionary 778 (8th ed. 2004)). Under *Rogers*, then, a benefit must "come in," that is, be received to qualify as income. In *In re Marriage of Worrall*, 334 Ill. App. 3d 550, 553-54 (2002), the court observed that income is "ordinarily understood to be a return on the investment of labor or capital, thereby increasing the wealth of the recipient." (Internal quotation marks omitted.) This definition aligns with Webster's and Black's, which likewise focus on receipt of money or payment. *Worrall* defines income with reference to the "recipient," implying the necessary assumption of receipt of the benefit. The date on which the benefit was earned is irrelevant; it is the receipt of the benefit that matters. Therefore, because the MICP bonus was not received until 2011–well after the child's undisputed emancipation in July 2010, which terminated petitioner's child support obligation–it was not income until 2011, and the trial court erred in including a *pro rata* share of the bonus in the 2010 income calculation.

¶ 29 Respondent rejoins that in Illinois what is taxable income under the Internal Revenue Code (IRC) does not govern the determination of section 505(a)(3) income; income for child support might or might not be taxable income under the IRC. *Rogers*, 213 Ill. 2d at 137; see *In re Marriage of McGowan*, 265 Ill. App. 3d 976, 979 (1994) (" '[I]ncome' for tax purposes is not synonymous with 'income' for determining child support."). As there is a dearth of Illinois case law addressing whether a benefit, earned while the child support obligation existed but not received until the obligation terminated, is section 505(a)(3) income, respondent turns to other jurisdictions for analogous comparisons. Respondent cites *Myhra v. Myhra*, 756 N.W.2d 528, 535 (Neb. Ct. App. 2008), wherein the court found a bonus received in 2006, for work performed prior to the dissolution of marriage in 2005, to be a marital asset. Respondent also cites *Lewis v. Lewis*, 785 P.2d 550, 556 (Alaska 1990), wherein the court found that stock received after the dissolution of the husband's marriage, but pursuant to an employment agreement executed prior to dissolution that would award him shares if the employer had a profitable 18 months, was a marital asset. Respondent asserts that marital assets are similar to section 505(a)(3) income–and are, in fact, defined less broadly–and that these cases are therefore instructive. Respondent argues that, because petitioner completed the performance that gave rise to the bonus before Emily's emancipation, the bonus was properly included in the child support calculation.

In petitioner's reply brief, he argues that section 510(d) of the Act provides only three exceptions to the general rule that a child support obligation terminates upon the child's emancipation. Again, this is not what is in dispute. The issue is whether the bonus was income upon receipt or upon completion of the performance that gave rise to it. Petitioner cites *In re Marriage of Waller*, 339 Ill. App. 3d 743 (2003), and *In re Marriage of Loomis*, 348 Ill. App. 3d 972 (2004), for the proposition that a child support obligation does not extend past the

emancipation date of the child. He argues that this proposition implies that, because the bonus was received after the emancipation, it is not subject to child support. Petitioner contends that "[t]he trial court erred in focusing on when the funds were earned rather than when received." Petitioner argues that the trial court's holding is problematic because it extends child support indefinitely (*e.g.*, for pension benefits or a "golden parachute" earned in part while the child was still a minor) and implies that income received during the child support period but earned prior to the obligation would not be subject to child support. Petitioner disagrees that respondent's cases cited from other jurisdictions are instructive, asserting that marital assets are not analogous to child support income. In rebuttal, he cites *In re Marriage of Wendt*, 2013 IL App (1st) 123261, which determined that a 2013 bonus to be received by the husband, if at all, for his work in 2012 was not marital property. *Id.* ¶ 33. The trial court entered a judgment for dissolution of marriage between the parties on September 19, 2012. *Id.* ¶ 9. On September 20, it ordered the parties to file memorandums of law addressing whether the husband's bonus, to be received in 2013, was marital property and thus subject to division between the parties. *Id.* The wife argued that the portion of the bonus that accrued during the marriage was marital property because her husband had a contractual right, not a mere expectancy, to the bonus. *Id.* ¶ 10. The husband argued that the bonus was indeterminate future income because he needed to be employed on the date that the bonus was distributed and the bonus would be given at the discretion of his employer. *Id.* The trial court agreed with the husband, ordering that the husband was entitled to retain the entirety of his bonus received in 2013.[2] *Id.* ¶ 11.

¶ 30       On appeal, the *Wendt* court framed the issue as whether a nonvested, discretionary bonus issued after the judgment for dissolution of marriage was a marital asset, and it found the issue to be one of first impression in Illinois. *Id.* ¶ 16. The court noted that the husband's employment was at will and that thus he had no right to receive the bonus by virtue of any employment contract. *Id.* ¶ 17. His employer's policy was that all bonuses were discretionary and based on myriad factors, including an employee's individual performance. *Id.* ¶ 18. Moreover, his 2012 bonus, if any, would be governed by the 2013 employee incentive program, or whatever incentive program was in effect in 2013. *Id.* ¶ 19. Therefore, the court found that the husband did not have a contractual right to the bonus at issue and that, without a vested right to the bonus, it was not marital property. *Id.* ¶ 20. Moreover, the *Wendt* court distinguished *Lewis*, one of the cases respondent relies on, because the husband in *Lewis* had an employment contract, whereas the husband in *Wendt* had no vested contractual right to the bonus he received in 2013. *Wendt*, 2013 IL App (1st) 123261, ¶¶ 26-27. The 2013 bonus was speculative until it actually vested, and thus the trial court did not err in finding that the bonus was nonmarital property. *Id.* ¶ 31.

¶ 31       Petitioner argues that, like the bonus in *Wendt*, the bonus here was too speculative to be considered income for child support. He had no vested right to the bonus at the time of the child's emancipation in 2010.

---

[2]He still owed, however, 20% of the bonus as child support. This was pursuant to the terms of the judgment for dissolution of marriage. *Wendt*, 2013 IL App (1st) 123261, ¶¶ 11, 14.

¶ 32    We agree with petitioner that the trial court erred by including the MICP bonus in its calculation of child support. In so doing, we must decide when the bonus was to be considered income under section 505(a)(3).[3] In agreeing with petitioner, we find instructive the comparison he suggests between marital assets in *Wendt* and child support income.

¶ 33    As with section 505(a)(3) of the Act at issue here (750 ILCS 5/505(a)(3) (West 2010) (" 'Net income' is defined as the total of all income from all sources" minus specified deductions)), "marital property" under section 503 is defined broadly as "all property acquired by either spouse subsequent to the marriage, except the following, which is known as 'non-marital property' " (750 ILCS 5/503(a) (West 2010)). Much like the issue with child support income here, the *Wendt* court was not deciding whether the bonus was nonmarital property; it was looking at whether the bonus was not property at all but rather a mere expectancy. *Wendt*, 2013 IL App (1st) 123261, ¶ 16. Because the court found that no contractual right to the bonus existed, and that the bonus was not automatic but was fully and explicitly at the discretion of the employer (*id.* ¶¶ 17-18), it could not say that the bonus was property at all, as the bonus was "speculative until it [was] actually awarded by [the] employer" (*id.* ¶ 31). In so holding, the court distinguished the bonus from pensions because the case law discussing pension rights concerned *contractual* rights to pension benefits, and the husband had no contractual right to his bonus. *Id.* ¶ 24.

¶ 34    The *Wendt* court further distinguished the bonus from stock bonuses more generally, which were addressed by this court in *In re Marriage of Peters*, 326 Ill. App. 3d 364 (2001). *Wendt*, 2013 IL App (1st) 123261, ¶¶ 28-30. *Peters* addressed the issue of whether a contingent stock bonus, earned in part during the marriage, was marital property subject to division. *Peters*, 326 Ill. App. 3d at 367. Although Illinois had not addressed stock bonuses earned in part during marriage, the legislature had addressed pensions earned in part during marriage in section 503(b)(2) of the Act, which provides that all pension benefits acquired after the marriage and before dissolution are presumed to be marital property. 750 ILCS 5/503(b)(2) (West 2010). The *Peters* court observed that Illinois courts had considered nonvested stock options acquired during marriage to be marital property, but with the caveat of not until the options were exercised. *Peters*, 326 Ill. App. 3d at 368. The court found the bonus "similar to nonvested pension benefits in that petitioner must remain employed for a certain time before he will have a right to receive it." *Id.* at 369. The bonus was also "similar to a nonvested stock option in that the recipient ha[d] the potential to receive stock in the employer." *Id.* Agreeing with the aforementioned Alaska case, *Lewis*–a case the *Wendt* court distinguished–the court held that "any portion of the stock bonus *earned during the marriage* should be considered marital property." (Emphasis added.) *Id.* The bonus was a contractual right that the husband was working toward during the marriage, and thus the bonus was more than a "mere

---

[3]This determination is separate and apart from *what* constitutes income; we have no doubt that the MICP bonus, for instance, is section 505(a)(3) income apart from *when* we are to count the bonus as income.

expectancy"[4]–it was marital property subject to division.[5] *Id.* Returning to the *Wendt* disposition, the court there distinguished *Peters*, and stock bonuses more generally, on the basis that there was no contractual entitlement to the bonus in *Wendt*. *Wendt*, 2013 IL App (1st) 123261, ¶¶ 29-30. Therefore, *Peters* was not " ' controlling *stare decisis*.' " *Id.* ¶ 30.

¶ 35 Moreover, *Wendt* rejected the contention that the speculative nature of the bonus was irrelevant to the determination of whether the bonus was marital property. *Id.* ¶ 31. It cited *In re Marriage of Abrell*, 236 Ill. 2d 249, 267 (2010), which held that, as a matter of first impression, accrued vacation and sick days were not marital property subject to division in a dissolution-of-marriage action. Our supreme court found that the value of accrued vacation and sick days was too speculative and uncertain until a party would actually collect compensation for them at retirement or upon termination of employment. *Id.* at 266. In fact, an employer may change its policy on the right to receive compensation for accrued sick or vacation days, perhaps limiting or even eliminating the right. *Id.* at 266-67. Therefore, the accrued days were not marital property subject to distribution in a marriage dissolution action. *Id.* at 267. On the other hand, when a party actually receives payment for accrued days following separation but before dissolution of marriage, that payment is marital property subject to distribution. *Id.* When the days have been converted to cash, the value of the days is definite and certain, and therefore the court may properly distribute that value. *Id.*

¶ 36 The case here is similar to *Wendt*, and we find *Wendt*'s reasoning with regard to marital assets applicable to a determination of section 505(a)(3) income. Although both *Wendt* and *Peters* focused on when the property was earned,[6] the difference between the two cases was the speculative nature of the bonus in *Wendt*. *Abrell* likewise based its holding on the fact that sick and vacation days were too speculative to be marital property, despite the accrual of the days during the marriage. Here, the MICP bonus was for petitioner's work performance in 2010. However, according to the MICP documents admitted into evidence at the September 12, 2011, hearing, the "MICP is not a contract or guarantee. Baxter reserves the right to revise, alter, amend or terminate the plan *** at any time, and retains *sole and complete discretion to pay or not pay any MICP award*." (Emphasis added.) Therefore, although petitioner earned his MICP bonus for work performed during 2010, payment of that bonus was ultimately at his employer's discretion. He did not have a contractual right to the bonus, as in *Wendt*. Discretion

---

[4]The requirements for the husband to receive the bonus were that he remain with the company for 10 years and that he average at least $125,000 in annual collected gross profit. *Peters*, 326 Ill. App. 3d at 369.

[5]After determining that the bonus was marital property, the court had to next consider what the trial court should do on remand. *Peters*, 326 Ill. App. 3d at 370. It ultimately settled on a "reserved jurisdiction" approach, where the court delays dividing the asset but orders how it will be divided if and when it is paid out. *Id.* at 371.

[6]In both cases, the bonus was received after the marriage dissolution but arose from work performance during the marriage.

outside of petitioner's control made the bonus speculative until it was received in 2011, and therefore we cannot say that petitioner had bonus income in 2010 for purposes of section 505(a)(3). Accordingly, the trial court erred by including a prorated amount of the bonus in its calculation of petitioner's 2010 section 505(a)(3) income.

¶ 37                          C. Characterization of Relocation Reimbursements

¶ 38       Turning to the relocation reimbursements, the trial court found that both the $20,355.21 sum (received before the child's emancipation) and the $14,487.62 sum (received after the child's emancipation) were section 505(a)(3) income, but petitioner argues that it erred because its analysis was inconsistent with its MICP bonus analysis and because the reimbursements were subsequently repaid by petitioner. In support, he cites *In re Marriage of Worrall*, 334 Ill. App. 3d 550, 555 (2002), where the court held that *per diem* allowances for travel expenses of a truck driver, while generally constituting income for purposes of calculating child support, are subject to reduction to the extent that the child support payer can prove that the allowances were used for actual travel expenses and not for his or her economic gain. Here, petitioner argues that, because the reimbursements were repaid, they could not have been used for his economic gain and thus under *Worrall* were not income.

¶ 39       We disagree with petitioner that the reimbursements were not income. We have already disagreed with the trial court's analysis of the MICP bonus, and we therefore proceed, consistent with that analysis, to address whether repayment of the reimbursements excludes the reimbursements from characterization as section 505(a)(3) income. Petitioner does not, on appeal, argue that the reimbursements were not income under section 505(a)(3), absent repayment.[7] Therefore, we assume for purposes of this opinion that the reimbursements were income to petitioner absent repayment.

¶ 40       Petitioner's reliance on *Worrall* is misplaced. *Worrall* involved *per diem* allowances for travel, not reimbursements for relocation expenses. The *per diem* allowances were for a truck driver to use for meals and lodging while on the road in performance of his truck-driving duties; here, the relocation reimbursements were not for expenses incurred while working but for expenses incurred by petitioner maintaining a second residence. Nonetheless, petitioner argues that, because the reimbursements were repaid, there was no economic gain–an argument that the benefit fell outside the large breadth of the section 505(a)(3) definition of net income. However, there was no obligation to repay the reimbursements until 2011 when he voluntary left Baxter, and therefore we cannot say that the repayments nullified any economic benefit of the reimbursements in 2010.

¶ 41       In any event, section 505(a)(3) of the Act lists the deductions that determine net income. 750 ILCS 5/505(a)(3) (West 2010). The statute defines net income as "the total of *all income from all sources*, minus the following deductions." (Emphasis added.) *Id.* As this court has noted, "[s]ection 505(a)(3) is not a comprehensive statement of what constitutes income, but is

_____
[7]In fact, regarding the $14,487.62 reimbursement, petitioner argues that it was "not income to [him] until *** actually received by him," implying that the reimbursement, absent repayment, would be section 505(a)(3) income.

- 11 -

a statement of legislative intent to limit the deductions that may be made in calculating net income for purposes of calculating child support." *In re Marriage of Minear*, 287 Ill. App. 3d 1073, 1086 (1997). As noted, we assume that, absent repayment, the reimbursements were income in this case. See *Villanueva v. O'Gara*, 282 Ill. App. 3d 147, 151 (1996) ("We hold that reimbursement for lost earnings may be considered 'income' for purposes of setting a support amount."); see also *Rogers*, 213 Ill. 2d at 136-37 (the legislature defined section 505(a)(3) net income broadly, which is broader than income under the U.S. Tax Code and included a man's gifts from his parents). That petitioner later repaid the reimbursements is relevant only insofar as it helps him satisfy a section 505(a)(3) deduction.

¶ 42    Unfortunately for petitioner, he has not explicitly broached an argument that section 505(a)(3) of the Act excludes the reimbursements from net income. It is the payer's burden to demonstrate that a section 505(a)(3) income deduction applies. See *Worrall*, 334 Ill. App. 3d at 555-56 (burden on payer of child support to prove expenses are not part of net income at hearing on remand); *In re Marriage of Nelson*, 297 Ill. App. 3d 651, 656 (1998) (depreciation expenses were not deductible under section 505(a)(3)(h) where the record did not demonstrate that the expenses were used to pay debt nor was there a specific repayment schedule provided). Because petitioner does not present a legal argument for why the repaid reimbursements should be excluded from his net income, we deem this argument forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013).[8]

¶ 43    In his reply brief, petitioner makes a different argument that is likewise forfeited. He argues that the circumstances of his voluntary termination of employment, which necessitated his repayment of the reimbursements, should have been a consideration in ruling on respondent's petition to increase child support. This argument is not an interpretation of section 505(a)(3) but rather raises a question of whether the trial court properly considered his financial circumstances in ruling on the petition to increase child support–essentially whether to deviate from the standard amount of child support delineated by section 505(a)(1), not the amount of net income under section 505(a)(3). However, petitioner initially challenged only whether certain items were net income, and therefore an argument that the trial court should have deviated from the section 505(a)(1) guidelines is not properly before us and is forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013).[9]

---

[8]Even had petitioner made the argument, though, there is doubt that he would have succeeded. The repayments do not fall into the deductible category of a state or federal tax, social security payments, mandatory retirement contributions, union dues, health insurance or life insurance premiums, prior support obligations, or foster care payments. 750 ILCS 5/505(a)(3)(a)-(g), (i) (West 2010). His hope would lie in section 505(a)(3)(h), but that requires expenditure on repayment of a *debt*, and he did not have any arguable debt to Baxter until 2011, when he voluntarily terminated his employment. Petitioner would have to make an argument that the repayment was indeed a debt under section 505(a)(3)(h), but we do not address that here as he never made such an argument.

[9]Even if the argument were properly before us, the argument would likely fail. The key inquiry would be whether he voluntarily *reduced his income* in good faith, not whether he left his job in good faith. See *Coons v. Wilder*, 93 Ill. App. 3d 127, 132 (1981) ("Substantial economic reverses resulting

- 12 -

¶ 44    As petitioner forfeited both his arguments that the trial court erred by including the $20,355.21 reimbursement in its calculation of net income, we affirm on that point. See *People v. Hillier*, 237 Ill. 2d 539, 540-41 (2010) (holding that defendant forfeited his arguments, precluding review, and thus leading court to affirm).

¶ 45    Petitioner makes an additional argument for why the $14,487.62 reimbursement should not be considered income. He argues that he received it after the Emily's emancipation and that therefore the reimbursement was more akin to the MICP bonus. The expenses giving rise to the right to reimbursement indisputably occurred within the obligation period. Unlike with the MICP bonus, however, we do not know the relevant terms of Baxter's agreement to reimburse petitioner. Petitioner does not cite any language that would show that the reimbursement, like the MICP bonus, was speculative until a time after the Emily's emancipation; he cites only the section that imposed his obligation to repay the reimbursements if he voluntarily left his employment. Ambiguities in the record are resolved against the appellant (*Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 155 (2005)), and therefore we assume that all events giving rise to the right to the reimbursement occurred prior to the child's emancipation. Because the reimbursement was income that accrued prior to emancipation and was not speculative like the MICP bonus, the trial court did not err in including the $14,487.62 reimbursement in its child support calculation despite petitioner's not receiving it until after emancipation.

¶ 46                                          III. CONCLUSION

¶ 47    Analogizing marital assets to child support income, we find that the trial court erred by including petitioner's MICP bonus, because, although it was earned for performance in 2010, the bonus was speculative until received in 2011. Speculative income, such as income at the discretion of an employer, is income for purposes of child support not when it is earned but instead when it is received, if received at all. However, the trial court did not err by including the two disputed reimbursement payments as income, because both accrued within the obligation period, and although one reimbursement was received after the support period ended, the reimbursement was not speculative. Accordingly, the Kane County circuit court's order granting respondent's petition to increase child support is reversed with respect to the MICP bonus and is affirmed with respect to the reimbursements. The cause is remanded.

¶ 48    Affirmed in part and reversed in part; cause remanded.

---

from investments or employment are proper circumstances to be considered in determining whether child support might be reduced or terminated."). He testified that he left Baxter to pursue a more lucrative job. This being the case, we would be hard pressed to say that the trial court abused its discretion by not deviating from the statutory child support guidelines.